On Application for Rehearing

ADAMS, Justice.
This Court's opinion of September 28, 1984, is hereby withdrawn, and the following opinion is substituted therefor.
This appeal is from the Baldwin County Circuit Court’s judgment entered on a jury verdict. This action involves coverage under an insurance policy, and was brought by plaintiff Mobil Equipment Company II, Inc. (Mobil Equipment), because of defendant’s failure to pay the loss sustained when one of Mobil Equipment’s trucks collided with a cow. The defendants below were Great Southwest Fire Insurance Company (Great Southwest), South East Underwriting Service (South East Underwriting), and the Donaldson-Tonsmeire Agency, Inc. (Donaldson-Tonsmeire). The case was tried to a jury and a verdict in favor of Mobil Equipment and against Great Southwest was returned, with the damages assessed at $65,000.00. At the close of the plaintiff’s evidence, all defendants moved *1051 for a directed verdict. The motion was granted in favor of South East Underwriting and Donaldson-Tonsmeire, but was denied as to Great Southwest. Defendant Great Southwest’s motion for judgment notwithstanding the verdict and motion for new trial were denied. Great Southwest then filed its notice of appeal to this court.
The facts of this case are as follows:
Mobil Equipment is located in Roberts-dale, Alabama, and is a corporation in the business of buying and selling used trucks. It purchased an insurance policy from Great Southwest, an insurance company located in Scottsdale, Arizona. Although the policy was actually issued on March 13, 1981, it was made retroactive to February 20, 1981, and was in effect until February 20, 1982. The policy provided collision and liability insurance for a fleet of trucks owned by Mobil Equipment. Donaldson-Tonsmeire of Foley, Alabama, purchased the policy for Mobil Equipment through South East Underwriting, paying a one-year premium of $4,573.00. South East Underwriting is a general insurance company located in Birmingham, Alabama. The policy listed two banks, Baldwin National Bank and First National Bank of Baldwin County, as loss payees.
Included in the insurance policy were several numbered endorsements, one of which was GSW393. According to South East Underwriting, this endorsement excluded coverage from damage which might occur outside a fifty-mile radius from Mobil Equipment’s base of operation. Bruce Hin-kle, an employee of South East Underwriting, testified that on March 13, 1981, he sent a GSW393 endorsement along with the insurance policy to Donaldson-Tonsmeire, requesting that it be signed by the insured and returned. Great Southwest routinely insisted that its insured sign an “Acknowledge and Acceptance” of this endorsement to be sure that its insureds had actual knowledge of the specific provision. South East Underwriting claimed that on at least four occasions it sent to Donaldson-Ton-smeire requests that Mobil Equipment sign and return the endorsement.
S.J. Donaldson, of Donaldson-Tonsmeire, testified that he did not remember receiving the GSW393 endorsement with the policy. He testified further that, up until the time he delivered the policy to Mobil Equipment and accepted its premium payment, he was not made aware of the GSW393 endorsement. According to Donaldson, it was not part of the bargain paid for by Mobil Equipment.
On May 13, 1981, Walter Jones (the owner of Mobil Equipment) was driving one of the trucks covered by the insurance policy when it struck a cow. Jones notified Donaldson-Tonsmeire of the wreck, and Donaldson-Tonsmeire sent a notice of loss to South East Underwriting on May 18, 1981. A few days later, Jones telephoned Donaldson-Tonsmeire to complain that an adjuster had not yet come to look at the damaged truck. Donaldson then called South East Underwriting to arrange for an adjuster to look at the truck. Donaldson said that he gave the name of the insured, along with the policy number, to an employee of South East Underwriting, and she gave him the name of the adjuster to contact. There was no mention made at that time by South East Underwriting of any problems with the status of the policy. To the contrary, Donaldson testified that it was not until he received a “credit memo” dated May 26, 1981, that he had any idea that the policy supposedly had been cancelled.
The actual date when the notice of cancellation was mailed was hotly contested at trial. South East Underwriting offered proof that the policy was cancelled and notice sent pursuant thereto on April 28, 1981. Darlene Timbs, the employee of South East Underwriting who claimed to have mailed the notice, did not testify at trial. Mobil Equipment and Donaldson-Tonsmeire state that this cancellation was not received by either of them until after the accident. They point to other dates on the notice of cancellation, the earliest being May 11, 1981, as possible dates of mailing. Bruce Hinkle, the South East Underwriting employee, was questioned about these dates, but was unable to explain their sig *1052 nificance to the jury. Hinkle testified that it was not required that the local agent and the loss payees be given notice of cancellation, but that South East Underwriting considered it proper business practice to do so, and tried to do so one hundred percent of the time.
Great Southwest raises two issues for our review:
1. Whether Great Southwest is liable to Mobil Equipment for breach of the insurance contract.
2. Whether Great Southwest is liable to Mobil Equipment for fraud.
We are of the opinion that the evidence supports the jury’s finding that Great Southwest is liable for breach of contract, but does not support a finding of liability for fraud.
I.
Appellant Great Southwest argues that it is not liable to Mobil Equipment for breach of contract because the insurance policy had been effectively cancelled prior to the accident. Great Southwest relies on Harrell v. Alabama Farm Bureau Mut. Cas. Ins. Co., 287 Ala. 259, 251 So.2d 220 (1971), for support. In Harrell, an insurance company claimed it had properly mailed notice of cancellation to the insured under a policy that contained a cancellation clause almost identical to the one in this case. In both cases the insurance company said it mailed the notice, and the insured said it did not receive the cancellation notice. This Court in Harrell stated:
The presumption of law is that a letter, properly addressed with sufficient postage, and unreturned to the sender whose address is shown on the envelope, was received by the addressee. Sorrell v. Scheuer, 209 Ala. 268, 96 So. 216; Frankin Life Ins. Co. v. Brantley, 231 Ala. 554, 165 So. 834.
287 Ala. at 264, 251 So.2d at 224, 225.
The case at bar is distinguishable from Harrell in that in Harrell, the insurance company, through the testimony of its mail clerk, offered substantial evidence that the notice of cancellation was properly mailed. Darlene Timbs, the employee who allegedly mailed the notice in this case, was not even called to testify. The insurance company merely pointed to one of a number of dates stamped on the notice as being the date the notice of cancellation was mailed. In Harrell, the local agent had timely received a copy of the notice of cancellation, whereas here Donaldson-Ton-smeire testified it never received a timely notice of cancellation; Donaldson-Ton-smeire testified that it was not until two weeks after the accident happened that it was notified of the cancellation. In addition, Donaldson testified at trial that he had taken out insurance for customers through South East Underwriting on several other occasions, and that each time a policy had been cancelled he had received notice of the cancellation. Furthermore, neither of the banks named in the policy as loss payees received notice of cancellation. Great Southwest had the burden of proving, through clear and convincing evidence, that a timely and proper notice of cancellation was mailed. Harrell, supra.
Harrell also stands for the proposition that if there is evidence that tends to show the letter was not received, then there is a question for the trier of fact as to whether it was mailed. There is ample evidence in this case which supports the jury’s decision that Great Southwest failed to meet its burden of proof and is liable to Mobil Equipment for breach of contract.
II.
We are of the opinion that there was a lack of credible evidence to support the jury’s finding of fraud on the part of Great Southwest. Even though the jury returned a general verdict, it must have found Great Southwest liable for fraud, because it awarded over $58,000.00 in punitive damages.
There are two ways that Mobil Equipment could have proven fraud on the part of Great Southwest: first, that an employee of Great Southwest made a mis *1053 representation which Mobil Equipment relied on to its detriment, and second, that either South East Underwriting or Donaldson-Tonsmeire made a misrepresentation, thus binding Great Southwest on the theory of respondeat superior. With regard to the former method, there is a complete lack of proof that anyone from Great Southwest had any direct contact with Mobil Equipment. Every communication made regarding the claim was done by either South East Underwriting or Donaldson-Tonsmeire. Even the insurance policy, which is the only document bearing Great Southwest’s name, was issued by South East Underwriting. Mobil Equipment failed to prove that it had any dealings whatsoever with Great Southwest concerning the claim.
Mobil Equipment’s only other option was to prove that Great Southwest was liable based on respondeat superior. At the close of the plaintiff’s case, however, the court granted directed verdicts in favor of South East Underwriting and Donaldson-Tonsmeire. As a result, these two agents of Great Southwest were fully exonerated by the court below. Therefore, Mobil Equipment could not recover against Great Southwest for fraud, because “a judgment exonerating the servant relieves the master when the servant’s conduct is the only basis of liability against the master.” Smith v. Birmingham Transit Corp., 286 Ala. 253 at 255-256, 238 So.2d 879 at 881 (1970).
In accordance with the foregoing, the judgment of the trial court is affirmed as to the breach of contract claim and reversed and rendered as to the fraud claim.
APPLICATION FOR REHEARING GRANTED; ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED IN PART; REVERSED AND RENDERED IN PART.
TORBERT, C.J., and FAULKNER, AL-MON and EMBRY, JJ., concur.