523 So.2d 361 (1988)
Jerry CALVERT
v.
CASUALTY RECIPROCAL EXCHANGE INSURANCE COMPANY.
86-726.
Supreme Court of Alabama.
March 11, 1988.
Rehearing Denied April 8, 1988.
Richard A. Meelheim and J. Scott Vowell Beddow, Fullan & Vowell, Birmingham, for appellant.
John F. Whitaker and Marcia W. Wright of Sadler, Sullivan, Sharp & Stutts, Birmingham, for appellee.
MADDOX, Justice.
This is an appeal from a summary judgment in favor of an insurer, and the question presented is whether there was sufficient evidence presented to the trial court on plaintiff's fraud and bad faith claims to defeat the insurer's motion for summary judgment.
The plaintiff, Jerry Calvert, had a commercial automobile insurance policy with Casualty Reciprocal Exchange Insurance Company ("CRE"). The policy was issued through the Houseal Insurance Agency. For reasons unrelated to this appeal, that coverage was dropped. However, Tammie *362 L. Reynolds, the personal lines underwriter at Houseal, wrote a letter to Calvert and informed him that Houseal would provide coverage for his automobiles under a personal automobile insurance policy. The policy would be with CRE. Calvert completed the application Reynolds sent him and also sent a year's estimated premium of $922.76. Reynolds said she called an employee of CRE and had this coverage approved ahead of time. Calvert's application and premium were received at Houseal on April 10, 1985, and a 30-day binder was issued to Calvert by Houseal. Reynolds said she specifically remembers mailing the application to CRE. CRE claimed that it never received the application.
On October 16, 1985, Houseal was notified that one of Calvert's automobiles had been stolen. Reynolds could find no record that a policy had been issued to Calvert by CRE. An independent loss adjuster filed a claim with CRE for Calvert's automobile, but CRE told the adjuster to inform Calvert that there was no insurance coverage. After being contacted by Calvert, Reynolds called CRE and later sent a letter detailing her transactions with Calvert. She also sent Calvert another application to complete and sign. He completed it. The original application filled out by Calvert was never found, and CRE refused to issue policies without the original signed application. The president of Houseal wrote a letter to CRE, and sent photocopies of Calvert's check and application. CRE told Houseal it would not accept any application with an effective date more than 45 days from the date the application was received. Obviously, the second application filled out by Calvert was completed after the theft occurred and the first application was only sent to CRE in photocopy form, after the 45-day limit CRE imposed. CRE again refused to pay Calvert's claim. Calvert then sued both CRE and Houseal, claiming breach of contract, fraud, and bad faith. CRE moved for summary judgment as to all three claims, and the trial judge granted the motion as to both the fraud claim and the bad faith claim. The summary judgment was made final pursuant to Rule 54(b), Ala.R.Civ.P., and Calvert then brought this appeal. The only issue presented is whether summary judgment was proper as to the fraud and bad faith claims.

I
Our rule of review on summary judgment is well settled. Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P. For example, a defendant is entitled to summary judgment when it is shown that there is no evidence to support some element of the plaintiff's cause of action; once the defendant has made a prima facie showing that some element of plaintiff's cause of action is missing, then, in determining whether there is any evidence to support that element, the Court must review the record in a light most favorable to the plaintiff (here, Calvert) and resolve all reasonable doubts against the defendant (here, CRE). Wilson v. Brown, 496 So.2d 756 (Ala.1986).

II
We first turn to Calvert's fraud claim. CRE claims that Houseal was an independent agent or broker, and, consequently, had no actual or apparent authority to bind CRE to an insurance contract. The question of agency is one for the trier of fact; and the existence and scope of a principal-agent relationship is normally a question of fact to be determined by the jury. Oliver v. Taylor, 394 So.2d 945 (Ala. 1981); National Security Fire & Casualty Co. v. Bowen, 447 So.2d 133, 138 (Ala. 1983). If a trier of fact finds from the evidence that Houseal is CRE's agent, then CRE could be liable on the fraud count. The evidence presented by deposition, although disputed, shows that Houseal had authority to receive and accept insurance contracts for CRE; that Houseal was a "licensed agent" for CRE; that Houseal had authority to bind CRE to a contract of insurance; and that CRE provided applications, sales literature, and instructions to Houseal's agents. We hold that this evidence, viewed in the light most favorable to *363 Calvert, creates sufficient evidence in support of Calvert's theory that Houseal was an agent of CRE. Because such evidence exists, summary judgment was not proper as to the fraud claim.

III
Was summary judgment proper as to Calvert's bad faith claim? Calvert argues that CRE was guilty of bad faith in refusing to pay his claim. He concedes that CRE's original refusal to pay did not constitute bad faith; however, he argues that CRE's continuing refusal to pay the claim, after it received notice that Houseal had submitted Calvert's application and accepted his annual premium, constituted bad faith. Calvert contends that, when CRE had received the letters sent by Reynolds and Houseal's president, it no longer had an arguable basis on which to deny the claim, because, he says, Houseal was CRE's agent and had the power to bind coverage for CRE.
The elements of the tort of bad faith are set out in National Security Fire & Casualty Co. v. Bowen, 417 So.2d 179, 183 (Ala. 1982):
"(a) an insurance contract between the parties and a breach thereof by the defendant;
"(b) an intentional refusal to pay the insured's claim;
"(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
"(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
"(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.
"In short, plaintiff must go beyond a mere showing of nonpayment and prove a bad faith nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim.
"The `debatable reason' under (c) above means an arguable reason, one that is open to dispute or question. Webster's Third New International Dictionary (1931) at 116. See Chavers [v. National Security Fire & Cas. Co., 405 So.2d 1] at 10; see also Embry, J., concurring on rehearing in Aspinwall v. Gowens, Ala., 405 So.2d 134 (1981)."
"`Bad faith imports a dishonest purpose and means a breach of a known duty ... through some motive of self-interest or ill will.'" Blue Cross & Blue Shield of Alabama v. Granger, 461 So.2d 1320 (Ala. 1984), quoting Gulf Atlantic Life Ins. Co. v. Barnes, 405 So.2d 916, 924 (Ala.1981).
This case is somewhat similar to this Court's case of National Security Fire & Casualty Co. v. Vintson, 454 So.2d 942 (Ala.1984), in which this Court held that the trial court erred in denying the insurer's motion for a directed verdict because there was conflicting testimony concerning conversations between the insured and the insurance agent regarding the time that the policy would take effect, and, therefore, a debatable reason existed for the insurer to deny liability. All the Justices of this Court concurred in that opinion, except Justice Faulkner, who concurred in the result.
In that case, the plaintiff had originally sued the insurer for breach of contract and for fraud, and the jury returned a verdict for the insured on both claims and the insurer appealed. This Court held that where the plaintiff claimed misrepresentation in the inception of the contract because of an alleged misrepresentation by insurer's agent regarding the time when the policy would take effect, the plaintiff had a right to present his case to the jury under either a breach of contract theory or a fraud theory, or both, but that the jury could award damages under only one of the theories, not both. After remand, the plaintiff amended his complaint to allege the tort of bad faith refusal to pay. A judgment was entered for the insured on that tort claim, based upon a jury verdict, and the insurer appealed again. This *364 Court wrote, regarding the bad faith claim, as follows:
"The following, as stated by this Court on the first appeal by National Security, clearly remains applicable in reviewing this case a second time:
"`This case turns on whether or not the jury believes that Feazell, as agent for NSFC [National Security], represented to Vintson that he was covered from the time of the payment of the premium and whether Vintson relied on such representations. If the jury believes those facts, then NSFC is estopped to deny that Vintson was covered under the policy. Feazell could also be guilty of misrepresentation. If the jury so finds, it could return a verdict based either on the contract or on the tort. If the jury does not believe that Feazell made the representations, then that precludes a finding of either a breach of contract or fraud. [National Security Fire & Casualty Co., Inc. v. Vintson ] 414 So.2d [49] at 51-52.'
"There was conflicting testimony concerning the conversation between Vintson and Feazell regarding the time that the policy would take effect. When the case was before us on the first appeal, we held
"`that in the narrow situation, such as the one in this case, where the plaintiff claims misrepresentation in the inception of the contract, i.e., where the agent misrepresents the moment in time that the policy will take effect, the plaintiff has the right to present his case to the jury under either a breach of contract theory or the tort of misrepresentation or both, because the same facts could support a finding that the contract did exist, even though the agent misrepresented the time of its inception.'
"The circumstances have not changed with regard to this appeal other than the fact that at the second trial a claim for bad faith refusal to pay was submitted to the jury along with the contract and fraud claims.
"It is clear from our holding following the first appeal of this case that plaintiffs would not be entitled to a directed verdict on the contract claim as a matter of law. Because we recognized that a jury question was presented regarding the claimed misrepresentations by the agent Feazell, a debatable reason existed for denying liability. The burden in this case was on the plaintiffs to show that National Security had no legal or factual defense to the insurance claim.
"At the time National Security denied Vintson's claim, it had before it the standard application for insurance, and evidence was presented at trial that until an application for insurance was favorably passed on by the company, and the policy was issued, and delivery was made to the insured, no policy of insurance was binding. This in itself satisfied the requirement of a debatable reason and was sufficient to prevent the submission of the bad faith issue to the jury. Further, because we find a jury question was presented on the contract claim, the trial court erred in allowing the bad faith count to reach the jury."
In this case, the trial judge apparently found that CRE had a "debatable reason" for denying Calvert's claim, and that there was no genuine issue of material fact on the bad faith claim. The presence of the following issues before the trial judge at the time he made his decision require this conclusion: whether an insurance contract existed between Calvert and CRE; whether Houseal was CRE's agent; and whether CRE's internal acceptance procedures prevented it from issuing a policy unless it received an original signed application and received it no later than 45 days after the policy's effective date. These issues show a debatable reason for CRE's refusal to pay Calvert's claim, under the Bowen test. An essential element of the cause of action for bad faith was missing (i.e., the absence of any legitimate or arguable reason for the insurer's refusal to pay), and because there was no genuine issue of material fact regarding this element of the offense, summary judgment was, therefore, proper as to the bad faith claim. Wilson v. Brown, 496 So.2d 756 *365 (Ala.1986); National Security Fire & Casualty Co. v. Vintson, 454 So.2d 942 (Ala. 1984).
AFFIRMED, IN PART; REVERSED, IN PART; AND REMANDED.
TORBERT, C.J., and BEATTY, HOUSTON and STEAGALL, JJ., concur.
JONES, ALMON, SHORES and ADAMS, JJ., concur in part and dissent in part, with opinion by ALMON, J.
ALMON, Justice (concurring in part and dissenting in part).
The evidence that Reynolds mailed the application, properly addressed, to CRE creates a presumption that CRE received it. Great Southwest Fire Ins. Co. v. Mobil Equipment Co. II, Inc., 473 So.2d 1049 (Ala.1985); Starr v. Doctors Hospital, 426 So.2d 826 (Ala.1983); Currie v. Great Central Ins. Co., 374 So.2d 1330 (Ala. 1979); Harrell v. Alabama Farm Bureau Mut. Cas. Inc. Co., 287 Ala. 259, 251 So.2d 220 (1971). CRE can rebut that presumption, but the question is one of fact. If the jury finds that CRE did in fact receive the application, and, for example, fraudulently denied having received it, the jury could then find that CRE did not have a legitimate reason for denying coverage. Furthermore, I find the evidence so persuasive that Houseal was a general agent of CRE that I would hold that a finding of bad faith could be premised upon CRE's claim that Calvert's submission of the completed application and the premium to Houseal did not effectuate coverage. Therefore, I would reverse the summary judgment for CRE on the bad faith count also.
JONES, SHORES and ADAMS, JJ., concur.