705 So.2d 363 (1997)
Danny BIRD
v.
METROPOLITAN LIFE INSURANCE COMPANY, et al.
METROPOLITAN LIFE INSURANCE COMPANY
v.
Danny BIRD.
Phillip C. OLIN and Cecil Chaney, Sr.
v.
Danny BIRD.
1950469, 1950509 and 1950517.
Supreme Court of Alabama.
July 11, 1997.
Rehearing Denied October 24, 1997.
Ted Taylor and Leah O. Taylor of Taylor & Taylor, Prattville, for Danny Bird.
Robert B. Reneau of Reneau & Thornton, Wetumpka, for Phillip C. Olin and Cecil Chaney, Sr.
*364 C.C. Torbert, Jr., of Maynard, Cooper & Gale, P.C., Montgomery; and Lee E. Bains, Jr., and Tony G. Miller, of Maynard, Cooper & Gale, P.C., Birmingham, for Metropolitan Life Insurance Company.
PER CURIAM.
Danny Bird sued Metropolitan Life Insurance Company ("MetLife"), Cecil Chaney, Sr., and Phillip C. Olin, alleging: 1) that the defendants had fraudulently misrepresented to Bird that he could purchase from MetLife an insurance policy that would become self-sustaining in three years; 2) that MetLife breached its contract to provide Bird with such a policy; and 3) that the defendants were negligent and wanton in failing to procure a policy that would become self-sustaining after three years or, in the alternative, in failing to advise Bird that such a policy could not be purchased. The jury returned a verdict for the plaintiff and against all defendants on the fraud and negligence claims; against MetLife on the breach of contract claim; and for all defendants and against the plaintiff on the wantonness claim. The jury awarded Bird $150,500 in compensatory damages and $1,750,000 in punitive damages. The defendants filed motions for JNOV or, in the alternative, for a new trial or a remittitur. The trial judge denied the motions for JNOV, but granted the defendants' motions for a new trial. Bird appeals from the order granting a new trial. The defendants cross appeal from the denial of their motions for JNOV. We affirm.
In September 1990, Danny Bird owned four life insurance policies with MetLife: a 1967 policy with a face amount of $13,000; a 1974 policy with a face amount of $20,000; a 1977 policy with a face amount of $28,000; and a 1979 policy with a face amount of $30,000. Bird was planning to retire from his job as an elevator mechanic in five years. He went to MetLife's Huntsville office, because he wanted to buy a whole life insurance policy with approximately the same total value, that he could "pay up" before he retired. At the MetLife office he was introduced to MetLife agent Phillip Olin and branch manager Cecil Chaney, Sr. They told Bird that MetLife would work up a program for him.
Subsequently, Bird met again with Olin and Chaney. At that meeting, Chaney explained that they had worked up a program that would allow Bird to purchase a whole life insurance policy that would be paid up in three years. They recommended that Bird use the cash values of his four existing Met-Life policies to purchase the new policy, and Olin explained that Bird must make three payments of approximately $2,600 and one payment of approximately $3,700 on a "paid-up additions rider" (PUAR). Neither Olin nor Chaney explained to Bird that interest rates had any bearing on whether his policy would be "paid up" within three years. Bird wanted a policy that would become self-sustaining after three years, so that same day he applied for the policy, signing documents that applied the cash values from his four MetLife policies toward the cost of the new policy.
Bird then decided to take out an accidental death benefit rider. He was not told that his purchase of the accidental death benefit rider would affect whether the new policy would become self-sustaining within three years. In January 1991, Bird received his policy from MetLife; it showed a premium schedule of $2,674.83 and a PUAR of $3,719.00 for the first policy year. Bird received a bill from MetLife for the $2,674.83 premium in October 1991, 1992, and 1993. He timely paid these premiums to MetLife. Bird never received a bill for a PUAR.
In October 1993, Bird went to the Huntsville office of MetLife to confirm that his policy would be paid up after he paid his premiums that month. There he met Met-Life agent Wayne Green. Bird testified that Green told him that "the money market had not been what they had anticipated and that it didn't produce enough money to make the payments and that I would have to pay for six more years." At that time Green gave Bird an illustration, dated November 1990, that showed three required payments on the PUAR. Chaney, the MetLife Branch Manager, told Bird that his options were to pay the required premiums or to cash in the policy. Bird decided to cash in the policy. This lawsuit followed.
*365 As previously stated, the jury awarded Danny Bird $150,500 in compensatory damages and $1,750,000 in punitive damages. The defendants then filed motions for JNOV or, in the alternative, for a new trial. On November 3, 1995, the trial judge denied the motions for JNOV, but granted the motions for a new trial. Because the trial judge did not state any ground in support of his order, the plaintiff filed a "Motion to State Specific Grounds for Order Granting Defendants' Motions for New Trial"; however, the trial judge deemed the motion "not well taken" and denied it.

NEW TRIAL MOTION
We first consider whether the trial judge erred in granting the defendants' motion for a new trial. "The granting or denial of a motion for new trial rests largely within the discretion of the trial court, and the exercise of that discretion carries with it a presumption of correctness that will not be disturbed on appeal unless some legal right was abused and the record plainly and palpably shows that the trial court was in error." Gold Kist, Inc. v. Tedder, 580 So.2d 1321, 1322 (Ala.1991). (Citations omitted.) The right to trial by jury is a fundamental right guaranteed by the Constitution; thus, a jury verdict cannot be set aside unless it is flawed. Art. I, § 11, Ala. Const. of 1901. A trial judge may grant a new trial on the ground that an error of law occurred at the trial, if the issue was properly preserved. Rule 59, Ala. R. Civ. P., and § 12-13-13(a), Ala.Code 1975.
When the trial judge's grounds for granting the motion for a new trial are not stated, as in this case, this Court applies this rule:
"`When the trial court grants a motion for new trial, without specifying the grounds therefor, the ruling must be sustained on appeal if any good ground is presented by the motion.' Groom v. Reynolds, 396 So.2d 690 (Ala.1981). However, if the trial court's order granting a new trial states no specific ground for granting a new trial, and this Court determines that no ground, other than a `great weight and preponderance of the evidence' ground, supports the new trial motion, we must then conclude that the `great weight and preponderance of the evidence' ground was the basis for the order. Where the basis for granting a new trial is that the verdict is against the great weight and preponderance of the evidence, this Court will reverse the trial court's new trial order if it is easily perceivable from the record that the jury verdict is supported by the evidence. In other words, if there is any evidence to support the jury's verdict, this Court must conclude that the verdict is not palpably wrong or manifestly unjust and must reverse the trial court's order granting the motion for a new trial. Jawad v. Granade, 497 So.2d 471 (Ala.1986); Ex parte Oliver, 532 So.2d 627 (Ala.1988); Northeast Alabama Reg. Med. Center v. Robinson, 548 So.2d 439 (Ala.1989).
State v. Blackburn, 655 So.2d 948, 949 (Ala. 1994).
The defendants assigned 38 grounds in their motion for a new trial. Because the trial judge stated no grounds for his order, we have reviewed all of the issues that were preserved for appellate review to determine if any ground for a new trial supports the trial judge's action. However, we treat only those issues pertinent to the decision in this case.
The defendants argue first that the trial court erred in granting the plaintiff's motion to strike MetLife's revised exhibit and witness lists and that that ruling severely handicapped their ability to defend. They contend that when the trial court continued the trial of the case from May 1, 1995, because one of MetLife's attorneys was involved with a capital criminal case, the case action summary stated that a new scheduling order was to issue. The defendants argue that one of the reasons the trial judge granted the motion for a new trial was that the defendants had reasonably relied upon the trial judge's order, on oral assurances, and on past practice, all indicating that a new scheduling order would issue.
However, the record reflects that the trial judge made the deadlines for discovery very clear. His "Order Setting Case for Trial, *366 Scheduling Order and Order for Pre-Trial Conference," dated December 5, 1994, instructs counsel to exchange witness lists not later than February 6, 1995, and sets the case for trial on May 1, 1995. Paragraph 4(b) of the Order reads:
"THE PARTIES AND THE ATTORNEYS ARE HEREBY PROHIBITED FROM EXTENDING THE COURT IMPOSED CUT OFF DATES FOR COMPLETION OF DISCOVERY INCLUDING DEPOSITIONS. THE COURT WILL CONSIDER GRANTING LEAVE TO EXTEND DISCOVERY CUT OFF DATES ONLY FOR GOOD CAUSE SHOWN WITHIN THE SOUND DISCRETION OF THE COURT. PROCRASTINATION WILL NOT BE REWARDED.
It was this discovery order upon which the trial judge based his order granting the motion to strike. Thus, any misunderstanding about scheduling guidelines would be the fault of counsel, not necessarily grounds for a new trial. However, the case action summary sheet does state that a new scheduling order is to issue.
The defendants argue also that the trial court erred in charging the jury as to negligence per se. We have carefully considered the record, and we conclude that the trial court erred in giving this jury charge, which was requested by the plaintiff. The trial judge charged the jury as follows:
"Now, there has been an Alabama insurance regulation mentioned. That regulation states that the insurance company shall provide at or prior to the delivery of an insurance policy a buyer's guide and a policy summary. The regulation also provides that the agent will leave with the purchaser or the prospective purchaser all written or printed advertisements applicable to the policy being applied for. Now, violation of the statute or regulation is negligence per se and one proximately injured thereby due to that act may recover therefor against the violator of the statute or the regulation. And if you're reasonably satisfied from the evidence that any defendant is in violation of the statute, then the plaintiff would be entitled to recover against that defendant."
The defendants preserved these objections to this charge:
"MR. MILLER: ... We except to the charge given on the buyer's guide and the illustration and the charge that the failure to give that would be negligence per se. There was no claim in this case of negligence relating to the failure to provide any written illustrations. And there is no evidence that the failure to give a buyer's guide in any way caused or contributed to the failure to obtain a policy that is self-sustaining after three years. Moreover, there was no evidence one way or the other as to whether or not Mr. Bird did or did not get a buyer's guide or what would have been in the buyer's guide...."
"MR. BAINS: Judge, we except to the portion of Your Honor's charge dealing with the policy summary and buyer's guide. Testimony was clear from Mr. Bird that he received a policy summary. That was Plaintiff's Exhibit Four, I believe. It was one of the documents that was discussed a lot. Also the buyer's guide, there was no testimony at all about a buyer's guide. It is also outside the scope of the pretrial order and the plaintiff's complaint. The resulting negligence per se instruction was inappropriate in light of that...."
The plaintiff Bird responds with the argument that the jury instruction was appropriate because his complaint alleged negligence and because he testified that Phillip Olin had failed to provide him with a copy of the illustration that was shown to him on the computer. Bird argues that the failure to provide him with a paper copy of the illustration was a violation of Alabama Insurance Regulation 64, § 5(B), which requires the agent to leave with the prospective purchaser all written or printed advertisements applicable to the policy being applied for.
The record reflects that MetLife filed a motion in limine regarding Alabama Insurance Regulation 64, § 5(B); that motion reads in part:

*367 "Plaintiff Danny Bird asserts that defendant Phil Olin was negligent per se because he violated Alabama Insurance Regulation 64 § 5(B) (`Reg. 64 § 5(B)') by failing to give Bird a copy of the policy illustration the two of them reviewed when Bird visited Olin's office in October 1990. Even assuming the truth of Bird's claim that Olin did not give him a copy of the illustration (Olin is expected to testify that he did provide Bird with a copy of such illustration), Olin's conduct did not violate Reg. 64 § 5(B). Moreover, in the facts and circumstances of this case, any such violation would not constitute negligence per se. As such, defendant Metropolitan Life Insurance Company (`MetLife') makes this motion in limine to preclude any reference to Reg. 64 § 5(B) or its alleged violation being made in the jury's presence."
The trial judge granted the motion in limine. The jury found in favor of Bird and against the defendants on Bird's negligence claim.
Because two good grounds were presented by the new trial motion, we cannot say that the trial judge was plainly and palpably wrong in granting that motion.

JNOV MOTION
The defendants, MetLife, Phillip Olin, and Cecil Chaney, Sr., argue that the trial judge erred in denying their motions for a JNOV. The standard of review for a JNOV motion has been stated as follows:
"`The standard of review applicable to a motion for JNOV is identical to the standard used by the trial court in granting or denying a directed verdict motion initially. Turner v. Peoples Bank of Pell City, 378 So.2d 706 (Ala.1979). Granting a motion for JNOV is proper "only where there is a complete absence of proof on a material issue or where there are no controverted questions of fact on which reasonable people could differ" and the moving party is entitled to judgment as a matter of law. Deaton, Inc. v. Burroughs, 456 So.2d 771 (Ala.1984).'"
Floyd v. Broughton, 664 So.2d 897, 899 (Ala. 1995), quoting Alpine Bay Resorts, Inc. v. Wyatt, 539 So.2d 160,162 (Ala.1988).
The defendants argue, first, that Bird failed to present clear and convincing evidence that the defendants intentionally or recklessly misrepresented a material fact to him. We disagree. Bird testified that Olin represented to him that he could make three payments of approximately $2,600 and one PUAR of $3,700 and have a "paid up" policy with MetLife of a face value of $107,000. Bird was told that the cash value of his four policies would cover this.[1] Bird testified that Chaney was present when Bird looked at an illustration on the computer and that Chaney agreed with what Olin had told Bird. Bird's policy with MetLife was admitted into evidence, and Bird testified that on page three of that policy the annual premium is shown as $2,674.83 and the additional rider is shown as $3,719.00. Nothing on the policy says anything about paying the PUAR beyond the first policy year. Annual statements of the PUAR for October 1991,1992, and 1993 were admitted into evidence. On these statements was written, "this is not a bill." Bird received premium notices for $2,674.83 in October 1991, 1992, and 1993, and he timely paid these premiums. The defendants contend that the representations made by Chaney and Olin were innocent and that the policy did not correspond to those representations because of a clerical error. Whether a fraudulent intent has been proven is a matter peculiarly within the province of the jury. Reynolds v. Mitchell, 529 So.2d 227, 231 (Ala. 1988); Mall, Inc. v. Robbins, 412 So.2d 1197, 1200 (Ala.1982). There was substantial evidence from which the jury could conclude that the defendants had acted with a fraudulent intent.
The defendants also contend that Bird was not injured by the representations of Olin and Chaney. However, Bird testified that when he went to the MetLife office in 1990, he had $91,000 in life insurance coverage for which he was paying $1,600 per year. The policies providing that coverage had a cash value of over $11,000. The cash value of all four policies was used to pay the cost of the *368 policy that he later surrendered. The amount he received upon surrender of the new policy was $9,809.36.
MetLife argues that it is entitled to a JNOV as to the plaintiff's contract claim, because, it says, Chaney and Olin were "soliciting agents" and as such had no authority to bind MetLife to an oral contract to procure the requested insurance policy. The question of agency is one for the trier of fact; and the existence and scope of a principal-agent relationship is normally a question of fact to be determined by the jury. Calvert v. Casualty Reciprocal Exch. Ins. Co., 523 So.2d 361 (Ala.1988). There is sufficient evidence in the record to support a finding that Chaney and Olin were not independent brokers who sold insurance for several companies. They were both employed by MetLife; Chaney was the branch manager. This evidence, viewed in the light most favorable to the plaintiff, is sufficient to support the jury's finding of agency. Id. at 363.
A motion for JNOV is properly granted only where there is a complete absence of proof on a material issue or where there are no controverted questions of fact on which reasonable people could differ and the moving party is entitled to a judgment as a matter of law. We have carefully studied the record, and we conclude that the trial court properly denied the defendants' motions for JNOV. The plaintiff presented substantial evidence in support of his claims as to all defendants.
For the reasons stated above, the order denying the defendants a JNOV but granting them a new trial is due to be affirmed.
AFFIRMED.
HOOPER, C.J., and MADDOX, SHORES, HOUSTON, KENNEDY, and COOK, JJ., concur.
SEE, J., concurs in the result.
BUTTS, J., concurs in part and dissents in part.
BUTTS, Justice (concurring in part and dissenting in part).
I concur in the affirmance of the order denying the defendants' motions for JNOV. However, I respectfully dissent from the affirmance of the order granting the defendants a new trial.
NOTES
[1] The cash value of the four policies Bird had with MetLife was $11,621.69.