STUART, Justice.
 

 Otto M. McLing and his wife Sandy M. McLing sued Gerald W. Crews, the president of Crews Homes, Inc. (“CHI”), in the Elmore Circuit Court, alleging, among other things, that Crews had negligently delivered and installed on the McLings’ property in Wetumpka a mobile home purchased from CHI in May 2005. Approximately 16 months after filing the action against Crews, and while the case against Crews was pending, the McLings commenced a separate action, also in the El-more Circuit Court, against CHI, alleging that neither CHI nor the CHI employees who delivered and installed the mobile home were properly certified by the Alabama Manufactured Housing Commission (“AMHC”). The McLings argued that their contract with CHI was therefore void and that they were entitled to a refund of the $79,863.75 they had paid for the mobile home. The trial court entered a summary judgment in favor of the McLings in their action against CHI and awarded them the entire $79,863.75 they sought, plus interest and costs. The separate case against Crews proceeded to trial, at the end of which the jury returned a verdict in favor of the McLings for $67,235. Both Crews and CHI appeal the judgments entered against them. In appeal no. 1071479, we affirm the judgment entered against Crews, and, in appeal no. 1071691, we reverse the judgment entered against CHI.
 

 I.
 

 On May 25, 2005, Otto McLing purchased, for $79,863.75, from the CHI sales lot in Montgomery a mobile home manufactured by Champion Home Builders Company. As part of the transaction, CHI agreed to deliver the mobile home to Otto and Sandy’s property in Wetumpka and to install it upon delivery. CHI employees Terry Mosely and Jerry Gordon delivered the mobile home to the McLings’ property the day after the purchase; however, during the delivery the mobile home was damaged when it struck a tree limb. McLing also alleges that the mobile home
 
 *690
 
 was placed in the wrong location on his property and that he had to install a new septic tank for it as a result.
 

 Mosely, Gordon, and other CHI personnel worked on installing the mobile home on Thursday, May 26, and Friday, May 27; however, at the end of the day on May 27, only one-half of the mobile home was “set” and the other half was still approximately two to three feet away from the half that was “set.” To protect the mobile home from the elements, the workers placed a tarp across the top of the mobile home before leaving for the weekend. Because it was Memorial Day weekend, they did not return to the McLings’ property until Tuesday, May 31, at which time it was discovered that the tarp had failed to protect the interior of the mobile home from the thunderstorms that occurred over the weekend and that the walls, floors, and ceiling of the mobile home were wet. Mold and mildew grew inside the mobile home as a result.
 

 CHI subsequently worked to repair the damage to the mobile home and to complete the installation; however, it did not finish working on the mobile home until late August. The McLings did not move into the mobile home at that time, however, because they still were not satisfied with its condition. The McLings had also made complaints to the manufacturer, and, in January 2006, representatives from Champion worked on the mobile home to repair certain manufacturer’s defects. The McLings allege that Champion inflicted additional damage upon the mobile home during that repair process. After Champion and CHI finished working on the mobile home, the McLings still were not satisfied with its condition, and they accordingly continued to make repairs and upgrades, using their own money and efforts. The McLings finally moved into the mobile home in December 2006.
 

 On January 17, 2006, the McLings sued Champion and Crews in the Elmore Circuit Court, alleging fraud, breach of warranty, negligence, and wantonness. On July 31, 2006, the McLings settled their claims against Champion for $62,500, and Champion was dismissed from the case. Crews thereafter amended his answer to claim a setoff based on the pro tanto settlement entered into to by Champion and the McLings. The McLings responded by moving the trial court to enter a partial summary judgment holding that Crews was not entitled to such a setoff and asking the trial court to bar Crews from even referencing at trial the McLings’ settlement with Champion. On April 9, 2008, the trial court granted the McLings’ motion and entered the following order:
 

 “This case came before the court for a pretrial conference and a motion hearing. Pending before the court was the [McLings’] motion for partial summary judgment or, in the alternative, [the McLings’] first motion in limine. The issue presented to the court is whether the [McLings’] settlement with Champion Home Builders is available to [Crews] as a setoff against any recovery the [McLings] make from [Crews]. Upon consideration of the documents filed and the arguments of counsel, the [McLings’] motion be and hereby is granted. The court finds that there was no ‘single, indivisible injury’ caused by [Crews] and Champion. Based on the testimony of [Crews’s] own expert, Michael Bazzell, the damages caused by setup and delivery of the home can readily be separated from the damages caused by the manufacturer of the home. [Crews is] prohibited from making any reference to the [McLings’] settlement with Champion in the presence of the jury or the jury venire.”
 

 
 *691
 
 On the same date the trial court entered the above order, it also entered a summary judgment in favor of the McLings in the separate case they had filed against CHI on May 23, 2007.
 
 [1]
 
 In that case, the McLings alleged that CHI had misrepresented that both it and its employee Mosely, who drove the truck that delivered the mobile home to their property, held the certifications required by the AMHC to deliver and install mobile homes. The McLings argued that their contract with CHI was void because, they said, neither was certified, and they further argued that they were entitled to a refund of their purchase price as a result. CHI maintained that both it and Mosely held the proper AMHC certifications and submitted documentary evidence of the certificates they held as well as two affidavits from Jim Sloan, administrator of the AMHC and the author of its regulations, in which he swore that both CHI and Mosely held the necessary certifications to deliver and install mobile homes. Both the McLings and CHI thereafter moved for a summary judgment, and, on April 9, 2008, the trial court entered a summary judgment in favor of the McLings by way of the following order:
 

 “1. The affidavits of Jim Sloan be and hereby are stricken on the grounds that Mr. Sloan may not provide oral testimony to interpret unambiguous regulations. See
 
 State v. Jackson Securities & Inv. Co.,
 
 243 Ala. 83, 8 So.2d 573 (1942). In view of the court’s ruling on this motion to strike, the court finds it unnecessary to' address the other grounds alleged by the [McLings] in support of their motions to strike Mr. Sloan’s testimony.
 

 “2. The court finds that Crews Homes, Inc., contracted to deliver and install the [McLings’] mobile home, and that it was not licensed to do so as required by § 24-5-32, Ala.Code 1975, and the regulations of the Alabama Manufactured Housing Commission.
 

 “3. The court further finds that Terry Mosely, who transported the home, was not a certified installer and was not under written contract with a licensed manufacturer or a licensed retailer as required by the regulations of the Alabama Manufactured Housing Commission.
 

 “4.
 
 Based on the foregoing the court finds that the [McLings’] contract with Crews Homes, Inc., is null and void, and that the [McLings] are entitled to a refund of their purchase price, together with interest at the rate of 6%.
 

 “5. The [McLings’] motion for summary judgment filed on or about July 17, 2007, be and hereby is granted. [CHI’s] motion for summary judgment filed March 11, 2008, be and hereby is denied.”
 

 After the summary judgment was entered in favor of the McLings in their case against CHI, the McLings moved the trial court to prohibit Crews from referring to that judgment or the ordered refund during the upcoming trial on their claims against him. On April 21, 2008, the trial court granted that motion by docket entry, noting that Crews was “[n]ot to discuss prior judgment and refund.” The McLings’ case against Crews was also called for trial on that date. During the course of the trial, the McLings agreed to dismiss all the claims they had asserted against Crews except the negligence claim, and, on April 24, 2008, the jury returned a verdict in favor of the McLings and against Crews for $67,235. Crews moved
 
 *692
 
 for a new trial pursuant to Rule 59, Ala. R. Civ. P.; however, that motion was denied, and the appeal Crews subsequently filed with this Court was docketed as appeal no. 1071479.
 

 On May 6, 2008, CHI also moved the trial court, pursuant to Rule 59, Ala. R. Civ. P., to alter, amend, or vacate the summary judgment entered against it. On May 23, 2008, after that motion was filed, but before a hearing was held on it, this Court released its opinion in
 
 Fausnight v. Perkins,
 
 994 So.2d 912 (Ala.2008), in which we reversed a summary judgment entered in favor of the plaintiff-homebuyers who had instituted an action seeking a refund of the $195,359.83 they had paid for their house because the builder of that house was not properly licensed. We stated in
 
 Fausnight:
 

 “On the same bases as articulated in the above-referenced annotation from
 
 American Law
 
 Reports,[
 
 2
 
 ] we conclude that the fact that the home builder in this case was not licensed, standing alone, is not a sufficient basis on which to require [the builder] to return the funds he has received from the [home-buyers]. We note as to the first four reasons stated in that annotation that Alabama’s statute contains no provision expressly requiring an unlicensed home builder to refund moneys paid to it. To read the statute as containing such a provision would be to read into the statute a private cause of action for homeowners that easily could have been, but was not, expressed by the legislature in the statute. The statute expressly deprives the unlicensed home builder of the right to use Alabama courts to collect unpaid moneys otherwise owed it; it does not purport to provide homeowners with a cause of action to obtain refunds of amounts paid to unlicensed home builders.”
 

 994 So.2d at 921. On June 11, 2008, CHI filed a “supplement” to its previous Rule 59 motion calling the trial court’s attention to
 
 Fausnight
 
 and arguing for the first time that the McLings had no legal basis upon which to claim a refund of their purchase price. The McLings filed an objection, arguing that CHI had failed to raise this argument previously and that, because the argument had not been made before the summary judgment was entered, it could not be raised in the Rule 59 motion. They also argued that CHI’s “supplement” was untimely because all posttrial motions filed pursuant to Rule 59 are to be filed within 30 days of judgment. The trial court denied CHI’s Rule 59 motion, and CHI then filed this appeal, docketed as appeal no. 1071691.
 

 II.
 

 Appeal no. 107U79
 

 Crews argues that the judgment entered on the jury verdict against him should be reversed for three reasons. First, he argues that he was entitled, as a matter of law, to a setoff in the amount of the pro tanto settlement entered into by Champion and the McLings because, he argues, he and Champion were joint tort-feasors inasmuch as their wrongful acts combined to cause a single injury — a reduction in the value of the McLings’ mobile home. Therefore, Crews argues, the trial court erred by granting the McLings’ motion for a partial summary judgment and holding that he was not entitled to a setoff. ‘We review a summary judgment and all questions of law
 
 de novo.” Pinker
 
 
 *693
 

 ton Sec. & Investigation Servs., Inc. v. Chamblee,
 
 961 So.2d 97, 101 (Ala.2006) (citing
 
 Smith v. State Farm Mut. Auto. Ins. Co.,
 
 952 So.2d 342 (Ala.2006)).
 

 In support of his argument that he was entitled to a setoff, Crews cites
 
 Ex parte Goldsen,
 
 783 So.2d 53, 56 (Ala.2000), in which this Court stated:
 

 “ ‘It is a universal rule that a plaintiff, although entitled to full compensation for an injury, is entitled to only one recovery for a single injury caused by two or more tortfeasors.’
 
 Shepherd v. Maritime Overseas Corp.,
 
 614 So.2d 1048, 1051 (Ala.1993); see also
 
 Ex parte Rudolph,
 
 515 So.2d 704 (Ala.1987). In those cases where one tortfeasor settles, we have allowed the nonsettling tortfea-sor to have the jury award reduced by the amount of any pro tanto settlement.
 
 Campbell v. Williams,
 
 638 So.2d 804 (Ala.1994).”
 

 The McLings, however, argue that the rule cited in
 
 Ex parte Goldsen
 
 is inapplicable because, they argue, Crews and Champion were
 
 not
 
 joint tortfeasors. The McLings argue that each damaged the mobile home at different times and it is possible to identify and separate the specific damage caused by each of them. In support of this argument, the McLings rely on
 
 Ex parte Martin,
 
 598 So.2d 1381 (Ala.1992), in which this Court considered a judgment entered against an insurance company alleged to have fraudulently induced the plaintiff to replace her Medicare supplemental policy with that company’s inferior policy. After a $300,000 judgment was entered against the insurance company, it petitioned this Court for a writ of mandamus arguing that it was entitled to a setoff based on a $225,000 settlement the plaintiff had entered into with a codefendant insurance company that had allegedly committed an identical fraud upon the plaintiff, albeit 14 months after the other insurance company. This Court declined to grant the petition and issue the writ, stating:
 

 “We hold that, as a matter of law, non-joint tort-feasor defendants whose acts do not combine to cause one single injury cannot claim a set-off as a matter of law of any amount received by the plaintiff in settlement with other non-joint tort-feasor defendants based on distinct acts of those defendants.
 

 “The second issue raised by the petitioners is whether they are entitled to a satisfaction of the judgment on the theory that to require them to pay the full $300,000 would result in a double recovery for [the plaintiff] for a single injury. However, we do not believe that [the plaintiff] has alleged a ‘single’ injury. She claimed to have suffered the humiliation, mental anguish, and embarrassment as a result of the settling defendants’ conduct in April 1986, and she claimed to have suffered the same type of injury as a result of the petitioners’ conduct in February 1985. Because the actions of the defendants did not combine to cause a single injury, we cannot say that [the plaintiff] has received double compensation.
 

 “While, in cases such as this, evidence of the existence of similar claims against multiple defendants who acted separately in time and manner may be probative on the issue of the
 
 amount
 
 of damage attributable to each defendant, the question whether testimony concerning the actual settlement will be allowed is, by necessity, within the trial court’s discretion and, therefore, would not be reviewable by a writ of mandamus when the right to appeal exists.
 

 “We have considered this petition because the trial court had denied a set-off where the petitioners claimed the law required it. We now hold that the law did not
 
 require
 
 a set-off. Because code-
 
 *694
 
 fendants who are not joint tort-feasors are not entitled to a set-off of the settlement amount, the petitioners have failed to show that they have a ‘clear legal right’ to have their judgment reduced by the amount of the settlement; therefore, we deny the petition for the writ of mandamus.”
 

 598 So.2d at 1385.
 

 We must determine, therefore, whether Champion and Crews were in fact joint tortfeasors so that Crews would be entitled to a setoff based on the settlement entered into by the McLings and Champion. The answer to that question in turn hinges on whether their actions combined to cause a single injury. The trial court held that there was no “single, indivisible injury” and cited the deposition testimony of Crews’s own expert, Michael Bazzell, in support of that holding. Bazzell testified as follows in that deposition:
 

 “Q: And what you have put down here on your report on plaintiffs exhibit #702 are things that in your judgment were related to setup of the [mobile] home?
 

 “A: Yes.
 

 “Q: And not related to the manufacture of the home?
 

 “A: Correct.
 

 “Q: In other words, this is not a situation where it’s just totally impossible to go in there and sort out or separate the manufacturing problems from the setup items? It’s not impossible to do that, is it?
 

 “A: No.
 

 “Q: Have you had cases where you felt that was in fact the case, you just couldn’t sort them out, or can you always sort them out?
 

 “A: You pretty much can always.”
 

 The McLings’ expert, Randall Chesser, also testified that the estimated cost to repair only the problems specifically attributable to installation and setup was $14,200, further indicating that it was possible to separate the damage done by Crews from the manufacturer’s defects and damage done by Champion in repairing those defects. In light of this evidence, the trial court’s holding that Crews was not entitled to a setoff because there was no single indivisible injury is due to be affirmed.
 
 [3]
 

 Crews next argues that he was wrongfully prohibited from cross-examining the McLings about actions of Champion that may have contributed to the McLings’ mental anguish. In support of this argument, he cites multiple cases standing for the proposition that a defendant is entitled to question a plaintiff seeking damages for personal injuries, including mental-anguish damages, about other conditions or injuries that the plaintiff has suffered that might, in fact, have been the actual source of the injury in question. See, e.g.,
 
 Lassie v. Progressive Ins. Co.,
 
 655 So.2d 952, 953 (Ala.1995) (holding that
 
 *695
 
 the trial court properly permitted the defendant to question the plaintiff about other conditions that might be the true source of his injury).
 

 The McLings do not dispute the correctness of the legal principle that forms the basis for Crews’s argument; however, they contend that his argument is nevertheless without merit because, they say, the trial court never prevented Crews from asking the McLings whether Champion’s actions contributed to their mental anguish. They note that Crews has not cited any specific ruling in which the trial court limited Crews’s cross-examination of the McLings in this regard, and they further note that the trial court’s April 9, 2008, order stated only that “[t]he defendants are prohibited from making any reference to the plaintiffs’
 
 settlement
 
 with Champion .... ” (Emphasis added.) Thus, the McLings argue, although the trial court prevented Crews from referencing their settlement with Champion, it did not prohibit Crews from asking the McLings about damage to their home caused by Champion and any mental anguish they may have suffered as a result of that damage.
 

 Furthermore, the McLings argue, Crews in fact asked Otto McLing about other possible sources of his mental anguish during the trial, as evidenced by the following transcript of his cross-examination:
 

 “Q: One more thing, Mr. McLing. I think you testified earlier that you suffered a great deal of annoyance and disappointment and inconvenience resulting from this lawsuit; is that right?
 

 “A: Yes, sir.
 

 “Q: Was there anything else going on in your life that could have also caused inconvenience, disappointment, or annoyance?
 

 “A: Not at that time I don’t believe.
 

 “Q: Not at this time?
 

 “A: No, sir.
 

 “Q: Not at any time when you filed this lawsuit?
 

 “A: No, sir.”
 

 An off-the-record discussion was held immediately following this testimony; however, the testimony quoted above was not stricken, and there is no indication that the trial court prevented Crews from continuing to pursue that line of questioning. Because it is not clear that the trial court prohibited Crews from asking the McLings whether a portion of the mental anguish they claimed to have suffered was attributable to Champion, much less that the trial court exceeded its discretion by doing so, see
 
 Kingsley v. Sachitano,
 
 783 So.2d 824, 827 (Ala.2000) (“It is settled that decisions concerning evidentiary matters are left to the discretion of the trial judge .... ”), Crews is not entitled to relief on this argument.
 

 Crews’s final argument in appeal no. 1071479 is that the trial court wrongfully precluded him from presenting evidence showing that CHI, in the separate action the McLings had filed against it, had been ordered to refund the McLings the $79,868.75 that they paid for their mobile home, plus interest and costs. Crews argues that the judgment entered against CHI fully compensated the McLings for any injuries they suffered and that the subsequent judgment entered against him in this case should have been barred by the doctrine of res judicata. The only cases cited by Crews in support of this argument are
 
 Hughes v. Allenstein,
 
 514 So.2d 858 (Ala.1987), and
 
 Dairyland Insurance Co. v. Jackson,
 
 566 So.2d 723, 725 (Ala.1990), which are both cited to illustrate the elements of res judicata.
 

 
 *696
 
 The McLings argue that Crews waived this argument because he never raised it in the trial court. See, e.g.,
 
 Imperial Crown Marketing Corp. v. Wright,
 
 560 So.2d 1025, 1027 (Ala.1989)
 
 (“Res judi-cata
 
 is an affirmative defense and if it is not raised in the trial court, it is deemed to have been waived.”). The record supports the McLings’ assertion that Crews never raised the issue of the applicability of the doctrine of res judicata in the trial court, and we accordingly cannot consider the merits of Crews’s argument in this regard. See
 
 Andrews v. Merritt Oil Co.,
 
 612 So.2d 409, 410 (Ala.1992) (“This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court.”) (citing
 
 Rodriguez-Ramos v. J. Thomas Williams, Jr., M.D., P.C.,
 
 580 So.2d 1326 (Ala.1991)).
 

 III.
 

 Appeal no. 1071691
 

 CHI makes essentially three arguments in this appeal: (1) that the trial court erred in determining as a matter of law that CHI and Mosely did not hold the certifications required by the AMHC for delivering and installing the McLings’ mobile home; (2) that the trial court erred by excluding the two affidavits of AMHC administrator Jim Sloan in which he indicated that CHI and Mosely were both properly certified to deliver and install the McLings’ mobile home; and (3) that the trial court erred by failing to apply this Court’s decision in
 
 Fausnight
 
 to this case. Because we agree that the evidence before the trial court was insufficient to establish as a matter of law that CHI and Mosely were not properly certified, we reverse the summary judgment entered by the trial court and pretermit discussion of the other arguments raised by CHI.
 
 [4]
 
 See
 
 Young v. La Quinta Inns, Inc.,
 
 682 So.2d 402, 403 (Ala.1996) (“A summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.”).
 

 We first consider the evidence indicating whether CHI was properly licensed to install the McLings’ mobile home. Section 24-5-32(a), Ala.Code 1975, provides that “[a]ll installers of manufactured homes and manufactured buildings must be certified by the [AMHC] to install such structures.” The legislature, in § 24-4A-3, Ala.Code 1975, authorized the AMHC to promulgate the rules necessary to fulfill its purposes, and, pursuant to that authority, the AMHC has adopted a rule providing that a “certified installer” is any “person, firm or corporation certified by the [AMHC] to install a manufactured home or manufactured building.” Rule 535-X-12-.02(2), Ala. Admin. Code (Ala. Manufactured Housing Comm’n). An installation certificate can be obtained by successfully completing an installer’s course conducted by the AMHC, passing a written or an oral test, and then completing and filing the AMHC application form, which is submitted to the AMHC along with the appropriate certification fee. Rules 535-X-12-.03(2) and (3), Ala. Admin. Code (Ala. Manufactured Housing Comm’n). The McLings argue that the trial court correct
 
 *697
 
 ly determined that CHI was not licensed to install their mobile home because an installation certifícate was never issued in CHI’s corporate name; rather, the only installation certificate produced in this case, certificate number 109, was issued in Crews’s individual name. The McLings argue that Rule 535-X-12-.02(2) clearly indicates that a certificate can be issued to any “person, firm or corporation” and that a corporation in the business of installing mobile homes, like CHI, cannot therefore operate under the installation certificate of one of its officers or employees.
 

 CHI, however, argues that it is a certified installer even though the installation certificate it claims to operate under was issued in Crews’s name. In support of this argument, CHI submitted to the trial court the official “application for installer certification” form that it filed with the AMHC. The first item of information requested on that application is the “name of applicant (person or company).” The application form submitted to the trial court by CHI lists the applicant in this case as “Crews Homes, Inc./Gerald W. Crews.” The next line states “if this is a firm or corp.
 
 list name of officer to be certified”
 
 and specifically requests that the person listed be the “same as [the] principal on bond.”
 
 [5]
 
 (Emphasis added.) The official AMHC application form therefore indicates, CHI argues, that if a corporation applies for certification, that certification will be issued in the name of the officer listed as the principal on the corporation’s bond.
 
 [6]
 
 In light of this evidence, we agree with CHI that there is, at least, a genuine issue of material fact as to whether it was properly certified by the AMHC as a mobile-home installer. The trial court accordingly erred by holding, as a matter of law, that it was not.
 

 We next consider the evidence indicating whether Mosely was properly certified to transport the McLings’ mobile home. Rule 535-X-12-.03(l), Aa. Admin. Code (Aa. Manufactured Housing Comm’n), requires that “transporters of manufactured homes or manufactured buildings who are not under written contract with a licensed manufacturer or licensed retailer must be a certified installer with the [AMHC].” It is undisputed in this case that Mosely had completed AMHC training and held what is referred to by the AMHC as an “installation certificate of training.” Mosely’s certificate of training states on its face that it is “not an installer certification” but that “this trained worker will be working with certified installer Gerald Crews, certification number, 109.” The McLings argue that under the plain language of Rule 535-X-12-.03(l), Mosely, the driver of the truck delivering their mobile home, was required to be “a certified installer,” that is, to hold his own installation certificate. CHI argues that it was sufficient that its employee Mosely held an “installation certificate of training” because that certificate expressly authorized him to work under the direction of CHI/Crews, a certified installer, and he was in fact operating under Crews’s direction when he delivered the McLings’ mobile home. We agree with CHI that the evidence in the record is at least suffi
 
 *698
 
 cient to create a germine issue of material fact as to whether Mosely was properly certified. Besides Mosely’s “installation certificate of training” itself, that evidence also includes Rule 533-X-12-.02(4), Ala. Admin. Code (Ala. Manufactured Housing Comm’n), which provides that “[t]o be a certified installer a person, firm or corporation must maintain a minimum of one driver/installer who possesses a current Certificate of Training from the [AMHC].” It is implicit in this rule that there are drivers who hold only a certificate of training. The trial court accordingly erred by holding as a matter of law that Mosely did not hold the necessary certification to deliver the McLings’ mobile home. Because it has not been established by substantial evidence that CHI and Mosely did not hold the proper AMHC certifications to deliver and install the McLings’ mobile home, the summary judgment entered against CHI is due to be reversed. All other arguments raised by CHI are accordingly pretermit-ted.
 

 IV.
 

 In appeal no. 1071479, Crews appealed the $67,235 judgment that the trial court entered on the jury’s verdict against him and in favor of the McLings. We hereby affirm that judgment. In appeal no. 1071691, CHI appealed the summary judgment entered against it. That judgment is hereby reversed and the cause remanded for further proceedings.
 

 1071479—AFFIRMED.
 

 COBB, C.J., and LYONS, WOODALL, SMITH, BOLIN, PARKER, and SHAW, JJ., concur.
 

 MURDOCK, J., dissents (writing to follow).
 
 *
 

 1071691—REVERSED AND REMANDED.
 

 COBB, C.J., and LYONS, WOODALL, SMITH, BOLIN, PARKER, MURDOCK, and SHAW, JJ., concur.
 

 [1]
 

 . Although CHI moved the trial court to consolidate the case against it with the McLings’ case against Crews, the trial court never formally did so.
 

 [2]
 

 . Michael T. Brunner, Annotation,
 
 Recovery Back of Money Paid to Unlicensed Person Required by Law to Have Occupational or Business License or Permit to Make Contract,
 
 74 A.L.R.3d 637, 642-44 (1976).
 

 [3]
 

 . Crews also argues that, even if it is possible to separate the damage to the mobile home caused by Crews from the damage caused by Champion, it was impossible for the McLings to state what percentage of the mental anguish they suffered was attributable to each defendant; therefore, Crews argues, that mental anguish should accordingly be viewed as a single indivisible injury, and Crews and Champion should be considered joint tortfea-sors on that basis. However, Crews did not make this argument until
 
 after
 
 judgment was entered; therefore, it has not been preserved for appellate review. See
 
 Williford v. Emerton,
 
 935 So.2d 1150 (Ala.2004) (holding that an argument made for the first time in a posttrial motion was not preserved for appellate review). The McLings argue that this argument is inconsistent with
 
 Ex parte Martin,
 
 supra, and
 
 Torsch v. McLeod,
 
 665 So.2d 934 (Ala.1995).
 

 [4]
 

 . The McLings argue that CHI has not properly raised the issue whether the evidence before the trial court was sufficient to establish as a matter of law that CHI and Mosely were not properly certified. We disagree. CHI has clearly articulated its arguments on this issue on pages 21-29 of its appellate brief and, in its statement of the standard of review, cites
 
 Jefferson County Commission v. ECO Preservation Services, L.L.C.,
 
 788 So.2d 121, 126 (Ala.2000), for the proposition that this Court must review " ‘whether the evidence before the [trial] court made out a genuine issue of material fact.' ” (Quoting
 
 Bussey v. John Deere Co.,
 
 531 So.2d 860, 862 (Ala. 1988).)
 

 [5]
 

 . Rule 535-X-15-.03, Ala. Admin. Code (Ala. Manufactured Housing Comm'n), provides that “to obtain licensure manufacturers, retailers, and installers must hold a valid bond and general liability insurance coverage ...."
 

 [6]
 

 . We further note that Rule 535-X-12-.03(3) provides that "[e]ach applicant [for installer certification] shall satisfactorily complete an installer's course conducted by the [AMHC] and pass a written or oral test prior to being issued a certification to install manufactured homes ...." Clearly, a corporation can fulfill this requirement only through its employees or officers.