THOMAS, Judge.
Joseph O. Kulakowski appeals from a judgment entered on a jury verdict awarding John Michael Cowart, Jr., and 130 St. Joseph Street, LLC (“the LLC”), compensatory damages in the amount of $22,400 and punitive damages in the amount of $10,600, on counterclaims of breach of contract, negligence, and conversion.[1]
The record reveals the following facts. In the spring of 2008, Cowart was developing a hotel in Mobile. He had acquired a long-term lease for a parcel of property on which stood a building known as the American National Bank Building (“the bank building”); Cowart’s plans required that the bank building be demolished and that that parcel of property be used as a parking lot. Cowart formed the LLC to hold title to the parcel and to contract with a demolition company to perform the task of demolishing the bank building; the LLC entered into a contract with Remedial Services Incorporated (“RSI”) to perform the demolition. As part of his plans for the hotel development, Cowart intended to salvage- and use certain items in the bank building and to salvage a portion of a brick wall on the property to serve as a barrier wall between the parking lot and a neighboring building. RSI cut the brick wall as requested, using a specialized saw, and conducted the remainder of the demolition.
*307 On May 12, 2008, Kulakowski was walking by the demolition site and encountered Cowart. Kulakowski was interested in the granite panels that adorned a portion of the bank building. Cowart had no other party interested in the granite panels and told Kulakowski that he would take $2,000 for the approximately 160 five-foot-by-five-foot granite panels on the building. Co-wart said that, while he and Kulakowski were discussing the matter, he telephoned the RSI site superintendent, Randall Carter, and spoke with him about Kulakow-ski’s getting the granite panels; Cowart said that Carter was not excited about the prospect but had agreed to allow Kulakow-ski access to the demolition site, provided Kulakowski met with Carter and met all the rules and regulations regarding the demolition site, including being insured. Cowart testified that he told Kulakowski that Kulakowski had to discuss access to the demolition site with Carter before removing any granite panels. According to Cowart, Kulakowski requested that Co-wart provide him with some way to identify himself as the person who Cowart had authorized to get the granite panels. Co-wart had a business card on which he wrote “OK to get granite.” Kulakowski said that he wrote $2,000 and his initials on the business card. Kulakowski said that Cowart did not telephone Carter-while in Kulakowski’s presence, but he admitted that Cowart telephoned him later to say that someone employed by RSI wanted him to remove the granite panels immediately so as not to stall the demolition.
Kulakowski testified that, subsequently, he went to the demolition site and spoke with Ronnie Simmons, one of RSI’s supervisors. According to Kulakowski, Simmons told Kulakowski that he needed to stay out of the way of the demolition crew, so, Kulakowski stated, he agreed to remove the granite panels at night and over the upcoming weekend. Kulakowski testified that -he began removing the granite panels on Friday, May 16, 2008. He said that he had spoken with Tilmon Brown, who. had explained that the best way to remove the ■ granite panels was to start from the top and work down. Kulakowski brought a “man lift” and a-“lull” to the demolition site to assist him in removing the granite panels.
• According to Kulakowski, other people were present at the demolition site over the weekend. He said that Don Adcock was there to collect brick and that Adcock employed homeless men to pick up and stack the brick for him. Kulakowski also said that he saw other people scavenging the site for brick or digging in the dirt, looking for whatever they might find. Although he testified that he was not interested in the brick, Kulakowski admitted that one of the men working for him might have collected some brick while on the demolition site; Kulakowski also explained that he and his men used pieces of broken brick as spacers between the granite panels as they stacked the panels.. Kulakow-ski and his men worked from Friday evening to Sunday and removed 101 granite panels; afterward, approximately 58 granite panels remained on the bank building.
On Monday, May 19, .2008, Carter said that he arrived on the demolition site to find that the brick wall Cowart had planned to maintain was missing approximately 300 bricks and had been all but demolished. Carter explained that the brick wall “looked like a truck ran through it.” In addition, Carter said, the demolition site was “a mess” and “a hazard” and the RSI sign that had been hanging on the fence surrounding the demolition site had been damaged. Carter testified that he telephoned Cowart to report that Kula-kowski had come and removed the granite panels and that the brick wall had been severely damaged.
*308 Cowart testified that Adcock telephoned Cowart on May 19, 2008, to report the damage to the brick wall. Cowart said that he tried to reach Carter and Simmons by telephone on that day but could not and that either Carter or Simmons telephoned him the following day to discuss the damage to the brick wall. Because the brick wall had been damaged and because Kula-kowski had failed to clear his access to the demolition site with Carter, Cowart said, he believed that any “deal” he had had with Kulakowski regarding the granite panels had been broken. Cowart testified that he telephoned Kulakowski and told him he could not get the remaining granite panels and that “the deal was off.” According to Cowart, because Kulakowski had broken the agreement to clear his access to the site with Carter, Kulakowski should have returned the granite panels he had removed and Cowart would not take the $2,000 Kulakowski had agreed to pay for the granite panels.[2]
In response to Cowart’s accusation that Kulakowski or his men had damaged the brick wall, Kulakowski offered, by letter, to “make it right” if the damage had indeed resulted from his removal of the granite panels; as a good-faith gesture, Kulakowski sent Cowart a $2,000 check as “liquidated damages” if the brick wall could not be repaired to Cowart’s satisfaction. However, at trial, Kulakowski testified that he did not see who removed the bricks from the brick wall. Kulakowski also sent Cowart a $2,000 check for the granite panels. Cowart returned the $2,000 check for the granite to Kulakow-ski; he did not cash the check denominated as “liquidated damages.”
Ultimately, the remaining granite panels were removed from the bank building by RSI. Because, according to Cowart and Carter, no market existed for the granite panels, no particular care was taken in removing the remaining granite panels from the building. Cowart testified that the remaining granite panels were destroyed.
In addition to Cowart, Carter, and Kula-kowski, two other witnesses testified at the trial: Brown and Gasper Naquin.[3] Brown testified that he owns a construction business and that his family had been in the stone and monument business for 196 years. Brown said that he had worked for his family’s business for a short time approximately 30 years before trial and that he had also served on the architectural-review board for the City of Mobile for 9 or 10 years and that he had served as its chairman for 4 years. He said that he had explained to Kulakowski that the granite panels needed to be removed from the top down because of the way they had been installed on the building. Brown indicated that he was present when Kulakowski removed the granite panels and that he had testified in his deposition that the bricks removed from the wall had been taken to Kulakowski’s yard. However, Brown later said that the bricks had been stacked in the “drive thru area” of the bank building and not in Kulakowski’s yard.
Naquin testified that he had 43 years of experience in the natural-stone industry as a fabricator, installer, and supplier of *309 granite and other stone materials. He explained that the granite panels on the bank building were Carnelian granite, which is mined in the Minnesota River valley. According to Naquin, the granite panels were two and a half inches thick and had been designed and cut specifically for the bank building and were not mass-market pieces; he said that granite fabricated for current uses was much thinner. Naquin testified that the granite panels had no salvage value because it would be cheaper to have new material fabricated than it would be to remove the granite panels and to attempt to refabricate them for another use. Naquin further explained that the granite panels had no commercial use or value but that he did not know whether they might have a personal use or value.
Kulakowski commenced an action in the Mobile Circuit Court (“the trial court”) against Cowart, the LLC, and Cowart Hospitality Services, LLC,[4] seeking declaratory relief and damages for breach of contract, conversion, and detinue on May 28, 2008. Cowart and the LLC answered, and the LLC asserted counterclaims against Kulakowski, seeking damages for breach of contract, trespass, conversion, negligence, and wantonness. See note 1, supra. The trial occurred over two days in March 2015.
After counsel for the parties struck the jury, Kulakowski informed the trial court that he desired to make a challenge to the composition of the jury under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Kulakowski contended that Cowart and the LLC’s counsel had struck almost all the African-American members of the jury venire. The trial court denied Kulakowski’s Batson challenge, stating that an argument relying solely on the number of African-Americans struck from the jury was insufficient to support a Batson challenge. See Williford v. Emerton, 935 So.2d 1150, 1157 (Ala. 2004).
Before the start of the trial, Cowart and the LLC made a motion in limine seeking to prohibit certain testimony regarding the value of the destroyed granite panels. Ku-lakowski had intended to call Brown as an expert on granite and to have him testify concerning the value of the granite panels. Cowart and the LLC argued that Brown was not qualified as an expert. The trial court granted the motion in limine to the extent that it precluded Brown from testifying as an expert; Brown was allowed to testify as a fact witness.
During the trial, Kulakowski made no motions for a judgment as a matter of law. Cowart and the LLC objected to Kulakow-ski’s reference in his closing argument to their decision not to call Simmons as a witness, arguing that Simmons was equally accessible to both sides, and the trial court sustained the objection. At the charge conference, Kulakowski’s counsel commented that he did not think that Cowart and the LLC had presented evidence supporting the negligence counterclaim and therefore that a jury charge on negligence was not warranted, but he did not elaborate. The trial court proceeded to charge the jury on breach of contract, conversion, and negligence.[5] After the trial court re *310 leased the alternate jurors, Kulakowski requested that an additional charge relating to the law of unambiguous contracts be given, but the trial court declined to do so. The trial court then submitted the case to the jury, which returned a general verdict in favor of Cowart and the LLC on Kula-kowski’s claims and against Kulakowski on the breach-of-contract, negligence, and conversion counterclaims. The jury awarded Cowart and the LLC compensatory damages in the amount of $22,400 and punitive damages in the amount of $10,600.' See note 1, supra. The jury also determined that Cowart had lost all rights to the granite panels that Kulakowski had removéd from the bank building. The trial court entered a judgment on the verdict on March 5, 2015.
Kulakowski timely filed what he styled as a “Motion to Vacate Verdict and For Judgment Notwithstanding the Verdict and/or Motion to Alter and Amend the Jury Verdict to Conform to the Evidence.” Within the body of the postjudgment motion, Kulakowski also sought a new trial-based on certain arguments asserted in the motion. Specifically, Kulakowski argued that the judgment entered on the jury’s verdict should be set aside on several bases. Regarding the punitive-damages award, Kulakowski argued in his post-, judgment motion that the jury’s verdict awarding punitive damages was unsupported by any, much less clear and convincing, evidence that Kulakowski had acted with malice, deliberate oppression, or wantonness. Kulakowski did not challenge the punitive damages as being excessive in that postjudgment motion.
Cowart and the LLC filed three separate responses to Kulakowski’s post-judgment motion in May 2015. On June 11, 2015, more than 30 days after the entry of the judgment on the jury’s verdict, Ku-lakowski filed a “reply” to Cowart and the LLC’s responses, in which he “supplemented” his postjudgment arguments by arguing more specifically that the jury’s verdict was defective in substance because of the use of the phrase “if applicable” in the punitive-damages section of the jury-verdict form and that the trial court had erred in allowing the conversion counterclaim to go to the jury and in allowing an assessment of punitive damages. In his June 1Í, 2015, reply, Kulakowski, for the first time, mentioned Hammond v. Gadsden, 493 So,2d 1374 (Ala.1986), and requested that the trial court “state for the record the factors upon which the court has determined excessiveness or lack thereof as to the jury’s verdict.” The trial court held a hearing on the postjudgment motion, after which, on June 12, 2015, it entered an order denying Kulakowski’s “Motion to Vacate Verdict and For Judgment Notwithstanding the Verdict and/or Motion to Alter and Amend the Jury Verdict to Conform to the Evidence.” The trial court’s order did not reference Kula-kowski’s June 11, 2015, reply to Cowart and the LLC’s responses to the post-judgment motion.
Kulakowski timely appealed the -judgment entered on the jury’s verdict to this court. On appeal, he raises several arguments. Kulakowski argues that the trial court’s decision to deny his postjudgment motion regarding the assessment of punitive damages should be reversed because the trial court failed to comply-with Hammond, Kulakowski also complains that the trial court improperly refused to set aside the jury’s punitive-damages award, despite, he says, the fact that Cowart and the LLC presented no evidence establishing malice, deliberate oppression, or wantonness to support a punitive-damages *311 award and because the jury’s verdict indicated that it had awarded punitive damages “if applicable.”
Kulakowski also argues that the trial court committed error in failing to “acknowledge” his Batson objection. He next complains that the trial court committed several evidentiary errors, including granting the motion in limine preventing Brown from giving valuation testimony as an expert, preventing Kulakowski from cross-examining Cowart and the LLC’s expert, Naquin, on his testimony regarding the value of the granite panels, and sustaining the objection to an exhibit Kulakowski had intended to use for impeachment purposes. Further, Kulakowski challenges the trial court’s allowance of Cowart’s testimony regarding the replacement cost of the brick wall.
Kulakowski next argues that the judgment entered on the jury’s verdict was flawed because, he says, an action for conversion will not lie for damage to real property or to personal property that has been incorporated into real property. Ku-lakowski also contends that the verdict was “flawed as to the negligence claim” because, he says, no evidence was presented. that would establish negligence or a breach of the standard of care. Based on his contention that the negligence and conversion counterclaims were improperly submitted to the jury, Kulakowski argues that the jury’s verdict awarding him the granite panels and awarding Cowart more than the $2,000 due under the alleged contract rendered the verdict irreconcilable or inconsistent. He next complains that the trial court erred in failing to give a requested jury charge on unambiguous contracts. Finally, he complains that the trial court erred when it sustained an objection to his closing argument, in which he had attempted to point out that Cowart and the LLC had not called Simmons as a witness. We address Kulakowski’s arguments on appeal in a different order than he has presented them in his brief.-
I. Whether the Trial Court Erred in Failing to Grant a New Trial Based on an Alleged Violation of Batson
Kulakowski argues that the trial court erred in failing to consider his argument challenging the makeup of the jury under Batson. After the parties struck the jury, Kulakowski objected to the makeup of the jury as follows: “I believe that [counsel for Cowart and the LLC] has struck most of the blacks off of this jury and we would make a Batson motion.” The trial court denied the Batson motion, stating: “Numbers alone do not constitute a prima facie case of Batson.”
Our supreme court has explained that “ ‘[t]he burden of persuasion is initially on the party alleging a discriminatory use of peremptory challenges to establish a prima facie case of discrimination.’” Williford, 935 So.2d at 1156 (quoting Thomas v. Diversified Contractors, Inc., 578 So.2d 1254, 1255 (Ala.1991)). In Williford,• the defendants had challenged the makeup of the jury by arguing to the trial court that the jury was composed of 1 white juror and 11 black jurors, and the trial court denied the motion, based on its conclusion that the defendants had not. established a prima facie case of discrimination. Williford, 935 So.2d at 1156. Our .supreme court affirmed the trial court’s denial of the defendants’ Batson motion in Williford, explaining:
“A trial court’s ruling on a Batson . motion is entitled to great deference, ■and an appellate court will not reverse a judgment because of such a ruling unless that ruling is shown to be clearly erroneous. Ex parte Branch, 526 So.2d 609, 625 (Ala.1987).... In Sharrief v. Gerlach, 798 So.2d 646, 655 (Ala.2001), *312 this Court stated that ‘ “ “it is important that the [party challenging the composition of the jury] come forward with facts, not just numbers alone, when asking the [trial] court to find a prima facie case of ... discrimination.” ’ ” ’ (Quoting McElemore v. State, 798 So.2d 693, 696 (Ala.Crim.App.2000), quoting other cases.) This Court has repeatedly listed the different ways a party can establish a prima facie case of discrimination for purposes of a Batson claim; however, the [defendants] instead relied upon ‘numbers alone.’ ”
Williford, 935 So.2d at 1157. Similarly, because Kulakowski also based his challenge to the composition of the jury on “numbers alone,” we find no error in the trial court’s denial of his Batson motion.
II. Whether the Trial Court Erred in Failing to Order a New Trial on the Basis That the Jury’s Verdict Was Defective Because It Contained the Phrase “If Applicable ”
Kulakowski argues that the jury’s verdict is constitutionally defective because it contained the phrase “if applicable” in parentheses before the award of punitive damages, and, therefore, he contends, it “deferred” to the trial court to determine whether a punitive-damages award was appropriate. The verdict reads:
“We, the jury, find in favor of the Defendants, John Michael Cowart, Jr., and 130 St. Joseph Street LLC, on their counterclaim and assess the Defendants damages against the Plaintiff, Joseph O. Kulakowski in the sum of $22,400 and (if applicable) punitive damages in the sum of $10,600. Mr. Cowart (the defendant) loses all rights to the granite [panels] currently in possession of Mr. Kulakow-ski (the plaintiff).”
The underlined portions of the above-quoted verdict are those portions that the jury filled in, and the other portions of the verdict are the words that appeared on the verdict form provided to the jury by the trial court. The trial court read and explained the verdict form to the jury at the same time it instructed the jury on the applicable law. At no time before the jury retired to deliberate did Kulakowski object to the wording of the verdict form provided to the jury, which contained the phrase “if applicable” in parentheses before the term “punitive damages.” His failure to do so precludes reversal of the trial court’s denial of this aspect of Kulakowski’s post-judgment motion. See Target Media Partners Operating Co. v. Specialty Mktg. Carp., 177 So.3d 843, 862 (Ala.2013) (explaining that a failure to object “to the verdict form ... after the trial court read it to the jury and provided the written verdict form to the jury” precluded appellate review because counsel was “presented with an opportunity at the end of the trial court’s charge to the jury to state any objection” but had not done so).

III. Whether the Record Discloses Clear and Convincing Evidence Supporting the Punitive-Damages Award

Kulakowski argues that the evidence presented at trial does not support the award of punitive damages in the present case. However, Kulakowski did not move for a judgment as a matter of law (“JML”) at the close of all the evidence pursuant to Rule 50(a), Ala. R. Civ. P., which is required to preserve an objection to the sufficiency of the evidence supporting a judgment entered on a jury’s verdict. See Edwards v. Davis, 600 So.2d 313, 314 (Ala.Civ.App.1992).
“An appellant who seeks reversal of an adverse judgment on the ground that there is insufficient evidence must meet a two-pronged test: he must have asked for a [JML] at the close of all the evi *313 dence, specifying ‘insufficiency of the evidence’ as a ground, and he must have renewed this motion by way of a timely filed motion for [postverdict JML] that again specified the same insufficiency-of-the-evidence ground. Rule 50, Ala. R. Civ. P.; King Mines Resort, Inc. v. Malachi Mining & Minerals, Inc., 518 So.2d 714 (Ala.1987); Bains v. Jameson, 507 So.2d 504 (Ala.1987).”
Johnny Spradlin Auto Parts, Inc. v. Cochran, 568 So.2d 738, 741 (Ala.1990). Because Kulakowski failed to properly preserve this issue for review, we cannot consider it on appeal. Edwards, 600 So.2d at 314.
IV. Whether the Trial Court Erred by Failing to State Its Basis for Denying Kulakowski’s Request for a New Trial Based on the Excessiveness of the Punitive-Damages Award Under Hammond v. Gadsden
Kulakowski argues that the trial court erred by failing to comply with Hammond because it did not specify its reasons for declining to grant a new trial based on the excessiveness of the punitive-damages award. As noted above, Kulakowski did not allege that the punitive-damages award was excessive in his original post-judgment motion. He first requested a Hammond hearing in his June 2015 “reply” to Cowart and the LLC’s responses to the original postjudgment motion. We must determine, then, whether Kulakowski properly and timely raised the excessiveness of the punitive-damages award. See Oliver v. Towns, 738 So.2d 798, 803 (Ala. 1999) (indicating that a trial court must hold a Hammond hearing “[ujpon a timely motion”); King Motor Co. v. Wilson, 612 So.2d 1153, 1158 (Ala.1992) (holding that, when the appellant had challenged the sufficiency of the evidence supporting the punitive-damages award and had not claimed that the award was excessive or requested a Hammond hearing, the trial court’s failure to hold a Hammond hearing was not error); Waldrip Wrecker Serv., Inc. v. Wallace, 758 So.2d 1110, 1116 (Ala.Civ. App.1999) (holding that the failure to request a Hammond hearing prevented reversal of the judgment based on the issue of excessiveness of a punitive-damages award).
It is well settled that a party must -file a postjudgment motion within 30 days of the entry of the judgment to which it is directed. Rule 59(b), Ala. R. Civ. P. A party may file an amended postjudgment motion within the 30-day period, and that amended motion will start the running of a second 90-day period for ruling on the motion, pursuant to Rule 59.1, Ala. R. Civ. P. See Roden v. Roden, 937 So.2d 83, 85 (Ala.Civ.App.2006) (stating that, “if a subsequent filing is deemed to be an amendment to a previous postjudgment motion, that amendment will trigger a new 90-day jurisdictional period only if the amendment is filed within 30 days after the original judgment, ie., within the time for filing an ‘original’ postjudgment motion”). A trial court may allow a party to add additional grounds for his or her postjudgment motion more than 30 days after entry of the judgment to which the postjudgment motion is directed so long as the original postjudgment motion remains pending before the trial court. Alabama Farm Bureau Mut. Cas. Ins. Co. v. Boswell, 430 So.2d 426, 428 (Ala.1983) (“[T]he trial court has discretion to allow an amendment to a motion for new trial to state an additional ground after thirty days from the final judgment, if the original motion was timely filed and is still before the court when the amendment is offered.”). The question presented in the present case is what a trial court must do to “allow” such an amendment.
*314 The trial court in the present case did not specifically allow the amendment to Kulakowski’s original postjudgment motion. Cf. Barnes v. George, 569 So.2d 382, 383 (Ala.1990) (stating that the trial court had allowed the amendment to the original postjudgment motion over the objection of the opposing party). The trial court did not indicate in any way that it had considered the June 2015 “reply” to have amended Kulakowski’s original postjudgment motion. Cf. City of Rainsville v. State Farm Mut. Auto. Ins. Co., 716 So.2d 710, 711 (Ala.Civ.App.1998) (determining that an amendment to the City’s original post-judgment motion was allowed because, “in its order denying that motion, the trial court specifically denied the City’s motion as amended ”). The title of the reply certainly did not apprise the trial court that Kulakowski desired to amend his original postjudgment motion to raise an issue regarding the excessiveness of the punitive-damages award, and the record contains no indication that the parties apprised the trial court of the issue at a hearing on the postjudgment motion. The trial court did not, as requested in Kulakowski’s reply, hold a Hammond hearing, indicating that, in fact, the trial court did not consider the reply to have effectively amended the original postjudgment motion to raise the ex-cessiveness of the punitive-damages award. Cf. Slaton v. Slaton, 542 So.2d 1242, 1244 (Ala.Civ.App.1989) (suggesting that the trial court’s grant of the relief requested in an amendment to a post-judgment motion indicated that the trial court had allowed the amendment).
Because the trial court has the discretion to allow an amendment to an original postjudgment motion, it must also have the discretion to disallow such an amendment. An appellant has the burden of demonstrating error on the record. Sou-tullo v. Mobile Cty., 58 So.3d 733, 738 (Ala.2010) (quoting Tucker v. Nichols, 431 So.2d 1263, 1264 (Ala.1983)) (“In order to secure a reversal, ‘the appellant has an affirmative duty of showing error upon the record.’ ”). Because the record does not disclose that the trial court exercised its discretion to allow the amendment to Kula-kowski’s original postjudgment motion, we conclude that Kulakowski did not timely challenge the punitive-damages award as excessive. Thus, we cannot hold the trial court in error for failing to hold a Hammond hearing or for failing to state its reason for denying a new trial based on Kulakowski’s late-asserted excessiveness argument.
, V. Whether. the Trial Court. Erred in Denying Kulakowski’s Post-judgment Motion
Kulakowski complains that the trial court erred in denying his postjudgment motion for three reasons. He first argues that the trial court erred by failing to set aside the jury’s verdict based on his argument that an action for conversion would not lie for the bricks allegedly removed from the brick wall. He next argues that the trial court erred in denying his post-judgment motion despite the fact that, he says, the record contains no evidence of negligence to support the trial court’s decision to charge the jury on the negligence counterclaim. Finally, Kulakowski argues that the trial court erred by not concluding that the general verdict could not be sustained because the verdict was inconsistent or irreconcilable. We will consider each argument in turn.

A, Whether the Trial Court Improperly Submitted the Conversion Counterclaim to the Jury

As Kulakowski states in his appellate brief, “ ‘[a]n action for conversion will not lie for the taking of real property, nor will it lie for the taking of personal proper *315 ty that has been incorporated into real property.’” Garrett v. Valley Sand & Gravel, Inc., 800 So.2d 600, 601-02 (Ala. Civ.App.2000) (quoting Baxter v. South-Trust Bank of Dothan, 584 So.2d 801, 805 (Ala.1991)) (internal citations omitted). Based on that principle, Kulakowski complains that the trial court erred in failing to grant his postjudgment motion because, he says, the trial court should not have submitted the conversion counterclaim to the jury. He bases this argument on his assertion that the conversion counterclaim sought damages for Kulakowski’s taking of the bricks and the granite panels, both of which, according to Kulakowski, had been incorporated into real property. Although Kulakowski correctly states the law on the subject, we cannot agree that the trial court erred in denying the postjudgment motion on this issue.
Cowart and the LLC argue that Kulakowski did not object to the trial court’s inclusion of a conversion charge to the jury and thus, that Kulakowski has waived any error in allowing the conversion counterclaim to be presented to the jury. Relying on A T. Stephens Enterprises, Inc. v. Johns, 767 So.2d 416 (Ala.2000), Kulakowski argues that, because the issue he has raised is an issue of “pure law,”- he was permitted to raise it in his post-judgment motion-without having raised it in a Rule 50(a) motion for a JML. He is incorrect.
Our supreme court has held that “a question of law addressed to the trial court at the close of the plaintiffs evidence, which strikes at the heart of the cause of action, need not, under all circumstances, be renewed at the close of all the evidence as a prerequisite to appellate review of the same question.” Barnes v. Dale, 530 So.2d 770, 776 (Ala.1988). In addition, the Barnes court made it clear that the two-step requirement for preserving error under Rule 50 applies to challenges to the sufficiency of the evidence. Barnes, 530 So.2d at 776-77. However, the Barnes court also stated that “questions of law must be clearly raised and presented.” Id. at 777. The defendant in Barnes had raised legal issues before the trial court on several occasions, including in a motion for a JML at the close of the plaintiffs evidence, so the legal issues had been presented to, and adversely decided by, the trial court before the jury returned its verdict. Id. at 778. Thus, the Barnes court concluded that the failure of the defendant to have made a renewed argument at the close of all the evidence on the legal questions that had previously been raised did not preclude the trial court from considering those issues in a postjudgment motion for a JML, because, the court said, “[i]t is not the obligation of the moving party to provide continuous notice of a question of law, once that issue,is properly raised and adversely ruled upon by the court,” Id.
Our supreme court has explained that “ ‘[a] trial judge may grant a new trial on the ground that an error of law occurred at the trial, if the issue was properly preserved.’” Beiersdoerfer v. Hilb, Rogal & Hamilton Co., 953 So.2d 1196, 1209 (Ala. 2006) (quoting Bird v. Metropolitan Life Ins. Co., 705 So.2d 363, 365 (Ala.1997)) (emphasis added). Kulakowski never asserted a legal challenge to the conversion counterclaim before that claim was submitted to the jury. Thus, we conclude that Kulakowski did not properly preserve his legal argument and that, therefore, it cannot be considered on appeal.
Finally, we note that Kulakow-ski’s failure to object to the conversion charge given to the jury also resulted in a failure to preserve the legal issue he now urges us to consider on appeal.
*316 “Unobjected-to instructions of the trial court become the law of the case:
“‘“Unchallenged jury instructions become the law of the case. Louisville & Nashville R.R. v. Atkins, 435 So.2d 1275 (Ala.1983).” Clark v. Black, 630 So.2d 1012, 1017 (Ala.1993). “The jury is bound to follow such instructions, even if they are erroneous. Lee v. Gidley, 252 Ala. 156, 40 So.2d 80 (1949) (erroneous instructions became the law of the case, and a judgment entered on the jury’s verdict comporting with those instructions would not be reversed on appeal).” 630 So.2d at 1017.
“‘Because no party objected in a timely manner, the court’s instruction, and the verdict rendered in accordance therewith, became the law of this case. For these reasons, [the appellant’s] inconsistency of the verdict argument will not serve as grounds for reversal of the judgment entered on the jury verdict.’ ”
Beiersdoerfer, 953 So.2d at 1209-10 (quoting BIC Corp. v. Bean, 669 So.2d 840, 844 (Ala.1995)). Accordingly, we cannot conclude that the trial court erred by failing to grant Kulakowski’s postjudgment motion insofar as it was based on an error of law resulting from the submission of the conversion counterclaim to the jury.
Within this argument in his brief, Kula-kowski also argues that the judgment entered on the jury’s verdict should be reversed because, he says, the trial court gave a misleading analogy in its conversion charge to the jury. As noted above, Kula-kowski did not object to the trial court’s charge to the jury. His failure to do so precludes our consideration of this argument. See Beiersdoerfer, 953 So.2d at 1209-10.

B. Whether the Trial Court Erred in Submitting the Negligence Counterclaim to the Jury

Kulakowski argues that the trial court committed error in charging the jury on the negligence counterclaim and that the trial court erred in failing to grant his postjudgment motion on this ground. However, Kulakowski does not challenge the trial court’s negligence charge as being erroneous or as improperly stating the law. Instead, he challenges the submission of the negligence counterclaim to the jury because, he contends, the evidence at trial was insufficient to warrant submitting that claim to the jury. That is, Kulakow-ski is challenging the sufficiency of the evidence regarding negligence presented at trial. See Cook’s Pest Control, Inc. v. Rebar, 28 So.3d 716, 722 (Ala.2009) (explaining that a challenge that “the claims submitted to the jury were not supported by substantial evidence” was not a claim of error in, or a request for review of, the trial court’s jury instructions but was instead a request for a JML on the disputed claim and that such a challenge was governed by Rule 50(a)).
As we explained above, a party must move for a JML at the close of the evidence to preserve an issue regarding the sufficiency of the evidence for appellate review. See Edwards, 600 So.2d at 314. We note again that Kulakowski failed to make a motion for a JML at any point in the trial. Thus, to the extent that he is arguing that the evidence was insufficient to have merited submission of the negligence counterclaim to the jury, that argument was not preserved for appellate review. Id.

C. Whether the Jury Returned an Inconsistent or Irreconcilable Verdict

Kulakowski also argues that the trial court erred by failing to grant his post- *317 judgment motion insofar as it was based on his complaint that the verdict is “wholly inconsistent and irreconcilable with any reasonable hypothesis presented by the evidence.” According to Kulakowski, the fact that the jury concluded that he could keep the granite panels he had removed from the bank building but failed to award him damages for the granite panels he was not allowed to retrieve (and which were destroyed) is inconsistent and irreconcilable with the jury’s ultimate award to Co-wart and the LLC of an amount exceeding the $2,000 contract price. Kulakowski contends that the jury’s verdict cannot be sustained under either the conversion counterclaim or the negligence counterclaim because, he says, those claims were improperly submitted to the jury; thus, he argues, the jury’s verdict is inconsistent and irreconcilable with the evidence presented at trial. Because we have decided Kulakowski’s arguments regarding the submission of the conversion counterclaim and the negligence counterclaim adversely to Kulakowski, this particular argument has been rendered meritless.

VI. Whether the Trial Court Erred When It Refused to Give a Jury Charge on Unambiguous Contracts

Kulakowski complains that the trial court erred when it refused to give the following charge to the jury:
“I charge you that the primary source for deciding whether a contract is clear and unambiguous is the text of the document itself. It is well established in Alabama that when an instrument is unambiguous its construction and legal effect will be based upon what is found within its four corners.”
According to Kulakowski, the writing on the back of the business card created an unambiguous contract permitting him to “get granite” from the bank building. The parties had the following discussion regarding the requested charge:
“THE COURT: What’s that, [counsel for Kulakowski]?
“[Counsel for Kulakowski]: It’s a requested jury charge I’d like to ask Your Honor to give.
“THE COURT: What? You’re supposed to do it at the end of the case.
“Well, what do you say, [counsel for Cowart and the LLC]?
“[Counsel for Kulakowski]: I think that’s appropriate for the facts and it’s certainly the right law.
“[Counsel for Cowart and the LLC]: Judge, I would object to this because this whole case is whether or not there is a legal contract and we dispute a legal contract. This charge assumes that that’s already decided.
“THE COURT: As I understood it there’s a dispute on whether or not there is a contract and so I decline to do it. It’s refused.”
Cowart and the LLC argue that, because the business card did not identify the location of the granite panels, specify the type of granite panels, or set out the period during which the' granite panels could be retrieved, the alleged contract was facially ambiguous, and, thus, they contend, the trial court properly refused Kulakowski’s requested jury charge. “‘[A]ny contract must express all terms essential to the transaction with definiteness sufficient to enable a court to enforce the parties’ agreement.’ ” Capmark Bank v. RGR, LLC, 81 So.3d 1258, 1268 (Ala. 2011) (quoting Macon Cty. Greyhound Park, Inc. v. Knowles, 39 So.3d 100, 108 (Ala.2009)); see also White Sands Grp., L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1051 (Ala.2008) (quoting Miller v. Rose, 138 N.C.App. 582, 587-88, 532 S.E.2d 228, *318 232 (2000), citing in turn Brooks v. Hackney, 329 N.C. 166, 170, 404 S.E.2d 854, 857 (1991)) (‘“To be enforceable, the [essential] terras of a contract must be sufficiently definite and certain.’”)* Cowart also testified that a precondition — that Kula-kowski discuss access to the site with Carter-existed. Thus, the record contains evidence indicating that the alleged contract was ambiguous and incomplete. Accordingly, the trial court did not err by refusing to give the requested jury charge.

VII. Whether the Trial Court Erred by Permitting Cowart to Testify to the Replacement Cost of the Brick Wall as an Element of Damages

Kulakowski argues that the trial court erred in allowing Cowart to testify regarding the cost to replace the damaged brick wall and regarding consequential damages resulting from Kulakowski’s conduct. . In the argument section of his brief on this issue, Kulakowski reiterates his argument that conversion will not lie for personal property that has been incorporated into real property. He then argues that the proper measure of damages for the damage caused to the brick wall is the difference between the value of the real proper ty before the damage and its value after the damage. He bases this assertion on Granade v. United States Lumber & Cotton Co., 224 Ala, 185, 189, 139 So. 409, 412 (1931) (opinion on original submission), in which our. supreme court, considering a trespass claim, based on the cutting of timber,- explained that, “[i]n the matter of damages for injury to the land by destruction of the trees and by trespass,- the damage is not measured by the value of the timber or property severed, but by the injury to the land by reason of its severance — the difference between the value of the land immediately before and after the trespass.” We are not convinced that Granade has application here, but we need not decide that issue. We have already concluded that Kulakowski failed to preserve for review his argument regarding the conversion counterclaim, and the only argument he presents on the damages issue is -inextricably intertwined with his argument that the conversion counterclaim was improperly submitted to the jury. That is, Kulakowski’s only argument on appeal is that the proper measure of damages is that for trespass to real property; but, because the jury was charged on conversion, and because Kulakowski failed to timely object, the conversion charge became law of the case, see Beiersdoerfer, 953 So.2d at 1209-10, and we cannot hold the trial court in error for failing to instruct the jury on the measure of damages applicable to a trespass claim. Thus, we need not consider whether the trial court erred when it permitted Cowart to testify regarding the replacement cost of the brick walk.

VIII. Whether the Trial Court Erred by Sustaining Cowart and the LLC’s Objection to Kulakowski’s Closing Argument

Although Kulakowski testified that he had discussed retrieving the granite panels with Simmons before he began the process, neither party called Simmons as a witness.during the trial. During Ku-lakowski’s closing argument, the following occurred:
“[Counsel for Kulakowski]: [Kulakow-ski] says I talked to Ronnie Simmons. He works for RSI. He’s a contractor just like Mr. Carter. He was the guy that sat out here all day yesterday. [Counsel for Cowart and the LLC] was going to call him as a witness but he didn’t.
“[Counsel for Cowart and the LLC]: I would object to that. He could have called him.
*319 “THE COURT: I sustain the objection. That witness was available to anybody.”
In his rebuttal argument, Kulakowski’s counsel attempted the same argument:
“[Counsel for Kulakowski]: And Mr. Kulakowski says, I went over there and talked to Mr. Simmons. Mr. Simmons is the one who told me where to start to get this granite. And if they wanted to dispute that, is what I was going to say earlier....
“[Counsel for Cowart and the LLC]: Judge, he could have brought Mr Simmons in.
“THE COURT: I sustained that objection.
“[Counsel for Kulakowski]: Your Honor, I didn’t want Mr. Simmons.
“THE COURT: That witness was available to either party. The fact that he wasn’t used, he could have been used by you. So you cannot say that.
“[Counsel for Kulakowski]: If I might say. Your Honor?
“THE COURT: You might not. You can go ahead with your argument.”
On appeal, Kulakowski argues that the trial court erred by not allowing him to argue that Cowart and the LLC’s failure to call Simmons supported Kula-kowski’s testimony that he had spoken to Simmons and that Kulakowski had therefore met the alleged precondition of the contract that he contact a “supervisor” on the demolition site before he could retrieve the granite panels. Kulakowski argues that “[t]he general rule, as to the availability of witnesses [ — ] ... that a party cannot comment in argument upon the failure of his opponent to call a particular witness if the witness is equally accessible to both parties” — does not apply in the present case because Simmons was not equally accessible to him. Black Belt Wood Co. v. Sessions, 514 So.2d 1249, 1254 (Ala.1986). “[B]eing amenable to process is not the sole criterion for determining ‘equal availability’ within the meaning of the rule.” Donaldson v. Buck, 333 So.2d 786, 788 (Ala.1976). As the Donaldson court explained:
“ ‘. There is a rule, and a just one, that if a party has a witness possessing peculiar knowledge of the transaction, and supposed to be favorable to him, and fails to produce such witness when he has the means of doing so, this, in the absence of all explanation, is ground of suspicion against him that such better informed testimony would make against him.’ ”
Donaldson, 333 So.2d at 788 (quoting Carter v. Chambers, 79 Ala. 223, 231 (1885)). We note that “[t]he trial court is in the best position to make a determination regarding possible bias and weigh the claims of equal availability,” Olympia Spa v. Johnson, 547 So.2d 80, 85 (Ala.1989), and that “[e]rror is not lightly presumed under this rule of no comment.” United Sec. Life Ins. Co. v. Goddard, 42 Ala.App. 629, 632, 174 So.2d 791, 794 (1965).
According to Kulakowski, the fact that Simmons worked on the demolition project prevents application of the general rule because, he says, Simmons would be inclined to favor Cowart and the LLC over him. Cowart and the LLC argue that Simmons was an employee of RSI and was, indeed, equally accessible to both sides. Cowart and the LLC cpntend that Simmons was not controlled by them, like an employee, officer, or director would be, and that nothing indicated that Simmons would likely be biased in their favor.
When considering whether a potential witness is equally accessible to both sides, our supreme court has considered whether the potential witness was “under the legal control of’ one party, Marigold Coal, Inc. *320 v. Thames, 274 Ala. 421, 427, 149 So.2d 276, 282 (1963) (concluding that the president of the company was under its legal control), or “whether the witness has some reason to favor one party over another.” Olympia Spa, 547 So.2d at 85. In Olympia Spa, the potential witness was a former employee of the spa company, and, our supreme court explained, the trial court could have determined that the former employee would defend his work and thus be biased in favor of the spa company. Id. In Donaldson, the trial court’s determination of bias was upheld when “[t]he witness had employed appellant’s counsel to prosecute a suit against appel-lee.” Donaldson, 333 So.2d at 789. In Drs. Lane, Bryant, Eubanks & Delaney, a partnership v. Otts, 412 So.2d 254, 260 (Ala.1982), our supreme court relied on the following evidence to conclude that the potential witness was not equally accessible to both sides: “The entry made by Dr. Mostellar in the medical records clearly indicated that testimony from him would be favorable to the defendants. It is not unreasonable to conclude that he would be friendly toward defendants and unfriendly toward plaintiff.”
Simmons was a supervisor on RSI’s demolition crew. Cowart and the LLC contracted with RSI to demolish the bank building. Cowart had no personal contract with Simmons, and, although there was some evidence indicating that Cowart might have spoken with Simmons about the damage to the brick wall, there is nothing in the record to indicate that Co-wart or the LLC has any legal control over Simmons based on Simmons’s employment with RSI during a project that ended nearly four years before the trial. In addition, Kulakowski has not presented a convincing argument that Simmons would be biased in favor of a hotel developer who contracted with Simmons’s employer for demolition services years ago. In light of the trial court’s better position to make a determination on the issue of equal accessibility, we cannot hold the trial court in error for failing to allow Kulakowski to comment on Cowart and the LLC’s failure to call Simmons as a witness at trial. See Olympia Spa, 547 So.2d at 85; Goddard, 42 Ala. App. at 632, 174 So.2d at 794.

IX. Whether the Trial Court Erred in Disallowing Brown’s Testimony Regarding the Value of the Granite Panels

Kulakowski challenges the trial court’s decision not to allow Brown to testify as an expert and its decision not to allow Kulakowski to present testimony regarding a quote for new granite panels that Brown had acquired from a granite company named Dakota Granite. Before trial, Cowart and the LLC filed a motion in limine challenging Brown’s status as an expert. The trial court granted the motion and allowed Brown to testify only as a fact witness.[6]
In his appellate brief, Kulakowski contends that Brown had particular experience, knowledge, or skill in the granite business and that, as a result, the trial court erred by failing to allow Brown to testify as an expert under Rule 702, Ala. R. Evid.[7] He relies on the following facts: *321 that Brown knew how the granite panels had been attached to the building and knew how to remove them without breaking them, that Brown thought that his father had actually installed the granite panels, and that his family had been in the stone and monument business for nearly 200 years. However, as Cowart and the LLC point out, Brown had last worked in his family’s business over 30 years before the trial and Brown recalled only one instance in which he had worked with the type of granite involved in this case, which was also in the 1970s, 30 or more years before the trial in this case. Even if Brown had had some experience hanging or removing granite panels, nothing in his testimony indicates that he had any expertise in valuing granite panels of the type involved in the present case. Instead of relying on his own knowledge, Brown had solicited a quote for new granite panels of similar size to form his “expert opinion” on the value of the granite panels in the present case, indicating that he was not possessed of the requisite knowledge to offer an expert opinion. See Furin v. City of Huntsville, 3 So.3d 256, 262 (Ala.Civ.App. 2008) (concluding that a civil engineer could not be properly qualified as an expert when he did not provide any indication that he possessed experience or specialized knowledge regarding the causes of flooding). Accordingly, we reject Kula-kowski’s argument that the trial court erred in failing to recognize Brown as an expert on the valuation of granite panels.

X. Whether the Trial Court Erred by Refusing to Allow Cross-Examination and Impeachment of Naquin

Kulakowski next complains that the trial court erred when it refused to allow him to cross-examine Cowart and the LLC’s expert, Naquin, by using the price quote Brown had procured from Dakota Granite. He also contends that the trial court erred by not allowing him to use a photograph of a granite panel being used as a stand for a statue of Jesus as impeachment evidence regarding the value of the salvaged granite panels. We reject both arguments.
Cowart and the LLC argue, and we agree, that the price quote from Dakota Granite is hearsay. See Rule 801(c), Ala. R. Evid. (“ ‘Hearsay’ is a statement, other than one made by the declar-ant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.”). The price quote was clearly offered to prove the truth of the matter asserted therein: the price of equivalent, new granite panels. Furthermore, we agree with Cowart and the LLC that the price quote is irrelevant; the price quote is for new granite panels of equivalent size and shape, which makes it irrelevant to the determination of the value of the salvaged granite panels, which, based on the evidence at trial, were specifically fabricated for the bank building and which are unable to be effectively refabricated for current uses. See Rule 401, Ala. R. Evid., and Advisory Committee Notes to Rule 401 (“The concepts of remoteness and dissimilarity, for example, continue as factors to be considered in the trial court’s discretionary determination of relevancy.”). Thus, we cannot conclude that the trial court committed error when it precluded cross-examination of Naquin based on the price quote.
Regarding the attempt to impeach Naquin, we reach the same conclusion. Naquin had testified on direct examination that the salvaged granite panels had no value or negative value because they could not easily be refabricated for current uses and would cost more to remove than they *322 were worth. On cross-examination, however, Naquin qualified his earlier testimony by stating that the salvaged granite panels had no commercial value. He admitted, however, that the salvaged granite panels could possibly have personal value to someone, like Kulakowski, -who might find a use for them; he said that he could not determine what value an individual who had some use for the salvaged granite panels might assign to them. The photograph Kulakowski desired to use for impeachment purposes, which depicted one of the salvaged granite panels being used as a base for a statue of Jesus, would have served no other purpose than to show that some creative, personal use might be made of the salvaged granite panels, which Na-quin had admitted was a possibility on cross-examination; “[a]ny impeachment through use of the photographs, therefore, would have been cumulative.” Baker v. Merry-Go-Round Roller Rink, Inc., 537 So.2d 1, 3 (Ala.1988). Because Naquin testified on cross-examination that the salvaged granite panels could possibly have personal Value to an individual who might find a use for them, we conclude that any error in precluding Kulakowski from using the photograph as impeachment evidence to prove that very fact is, at best, harmless error. See Rule 45, Ala. R.App. P. (“No judgment may be reyersed or set aside, nor new trial granted in any civil ,.. case on the ground of ... the improper admission or rejection of evidence, ... unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties.”).

Conclusion

We have rejected each of Kulakowski’s arguments on appeal. Accordingly, the judgment of the trial court entered on the jury’s verdict is affirmed.
AFFIRMED.
THOMPSON, P.J., and PITTMAN and DONALDSON, JJ., concur.
MOORE, J., recuses himself.

, Although the pleadings indicate that the counterclaims were asserted only by the LLC, it appears that the judgment on the breach-of-contract, negligence, and convérsion counterclaims was entered in’ favor of both the LLC and Cowart.

. In fact, Cowart returned the $2,000 check Kulakowski had sent him as payment for the granite panels.

. One other witness, Lewis Brandan, testified at the trial, but his testimony was of little value. Brandan, a security guard for a neighboring building, testified that he had viewed a security video that had depicted bricks being stacked on a trailer. He said that he could not tell who was stacking the bricks or if the stacked bricks had been removed from the brick wall because the trailer obstructed his view of the brick wall.

. The claims against Cowart Hospitality Services, LLC, were voluntarily dismissed at the commencement of the trial.

. The trial court did not charge the jury on the wantonness and trespass counterclaims or on Kulakowski’s detinue claim, and, because the case was submitted without objection to the jury without its having been charged regarding those claims, those claims are deemed waived. See Kult v. Kelly, 987 So.2d 551, 557 (Ala.2007) (explaining that if a charge on a particular claim is not given to the jury and the parties do not object before *310 the jury begins deliberations, the omitted claim has been waived).

. Although the trial judge orally granted the motion before the trial commenced, stating: "I grant the motion in that it relates to the price of the granite today and this stuff about Dakota Granite,” the trial court inadvertently entered an order on March 6, 2015, after the conclusion of the trial, indicating that it had denied the motion in limine; on Cowart and the LLC’s motion, the trial court entered a corrected order reiterating the substance of its oral ruling.

. Rule 702(a), Ala. R. Evid., reads, in pertinent part: "[A] witness qualified as an expert by knowledge, skill, experience, training, or *321 education may testify ... in the form of an opinion or otherwise.”